7041

POOLE v. PARIS MOUNTAIN WATER CO.

1. MANDAMUS is an appropriate remedy to compel a public service water company to supply its customers with water upon compliance with its reasonable rules and regulations.

2. WATER COMPANIES—REASONABLE RULES.—In absence of a statute making water rents a lien or encumbrance on the premises, a rule authorizing the company to cut off the supply upon refusal of a tenant to pay water rent of a delinquent landlord or former occupant is unreasonable, but such rule is reasonable when used to make the tenant pay proper water rent for water previously used by him.

3. IBID.—Under the facts here the water company has the right to charge petitioner meter rates.

4. IBID.—The right to cut off the water supply and to refuse to furnish more until past due bills are paid should not be used to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes. *Held* here that the evidence raised a serious issue as to the correctness of the water meter and that the company violated its rules in shutting off the supply in ten days after rendering bill, and that it violated its duty to the public in refusing to enter into a contract with consumer for the current term.

Before KLUGH, J., Greenville, January, 1908.   Reversed.

Petition by J. B. Poole for writ of mandamus against Paris Mountain Water Company.

The circuit decree is:

"This case comes before me on petition for a writ of mandamus to compel the respondent to furnish water to the residence of the petitioner on Coxe street, in the city of Greenville. Upon reading the application and petition, a rule was issued, directed to the respondent, requiring it to show cause why the writ should not be granted as prayed for in said petition. To this the respondent made due return and argument was had before me on this date.

"A brief statement of the facts is as follows:

"During the month of January, 1907, the petitioner took up his residence in a dwelling house on Coxe street, which house was owned by one W. A. Hamby. He found that water was at that time in the pipes and he continued to use it during the whole of that year, paying nothing for it. Near the end of the year 1907, he was notified that unless the water bills were paid the water would be cut off. The petitioner refused to pay the water bills, and the water supply was thereupon cut off. The petitioner then endeavored to have a new contract executed for the year 1908, but respondent refused to do so until the water rent for 1907 was paid. He then brought this action to compel the respondent to furnish him with water for the year 1908.

"It appears that a very large quantity of water passed through the meter into the service pipe of the petitioner during the year 1907; so much, in fact, as to indicate a most excessive use of water or the existence of a leak. The water rent for the year amounted to about sixty dollars. In an endeavor to adjust the matter, the respondent offered to settle the entire bill for the year of 1907 for twelve dollars. The petitioner offered to pay five dollars, and upon the refusal of the respondent to accept this offer, all negotiations looking to a settlement were ended.

"It appears that the respondent is operating under a franchise granted by the City Council of Greenville, which fixes the rates and also allows the respondent to make reasonable rules and regulations, one of the regulations being

that for failure to pay water bills, the service may be discontinued.

"The petitioner had no written contract with the respondent for water for the year 1907, but the use of the water for the year 1907 by the petitioner created an implied contract to pay a reasonable sum for such amount of water as he consumed. The existence of this implied contract is admitted by the petitioner. As for the charge to be made, it is left entirely optional with the respondent whether it shall charge a flat rate of five dollars per year or a meter rate based upon the amount of water actually consumed; both methods are authorized by the franchise. The respondent chose to charge a meter rate, as it was empowered to do.

"I therefore find as follows:

I. "That under the ordinance containing the franchise, the respondent had the right to charge forty cents per thousand gallons for the water by meter readings; no question being raised as to the validity of the ordinance, the reasonableness of the rate or the reliability of the meter.

II. "That the petitioner used water for the year under an implied contract to pay a reasonable sum for the amount consumed; the existence of the implied contract being admitted by the petitioner and the reasonableness of the rate not being questioned.

III. "That the ordinance granted the respondent the right to make reasonable rules and regulations, and that in pursuance thereof the respondent adopted a rule providing that if water bills were not paid within thirty days, the water might be cut off; the reasonableness of this rule was not questioned.

IV. "That the opinion of the petitioner that he has not consumed as much water as the meter registered, is not of itself sufficient to justify him in refusing to pay his water bills; the meter readings being taken as true in the absence of testimony to the contrary.

V. "That this is not such a case of disputed account as will prevent the respondent from availing itself of its franchise rights.

VI. "That the respondent has acted in all respects in accordance with its legal rights under its franchise.

"It is therefore ordered, adjudged and decreed, That the application for a writ of mandamus be denied and that the petition be dismissed."

From this decree, petitioner appeals.

*Messrs. Jas. H. Price* and *J. J. McSwain,* for appellant, cite: *As to legal duty of respondent to furnish water to petitioner:* 19 Ency., 872; 29 Cyc., 378; 14 L. R. A., 424; 56 Am. St. R., 577; 81 Am. St. R., 479; 61 S. C., 83. *What is effect of arrearage on present right?* 68 Am. St. R., 432; 6 L. R. A. (N. S.), 706; 32 L. R. A., 697; 56 Am. St. R., 574. *Can respondent judge of the amount due?* 14 Ency., 931; 20 Cyc., 1165. *Appellant is entitled to his legal rights pending the controversy:* 61 S. C., 83; 52 Am. Rep., 404; 29 L. R. A., 376; 57 Am. R., 28; 99 Tenn., 420; 63 Am. St. R., 823.

*Messrs. Cothran, Dean & Cothran,* contra, cite: *Company entitled here to charge the amount indicated by the meter:* 14 A. & E., 945; 30 A. & E., 434. *The rule as to cutting off supply is reasonable and company may enforce it:* 30 A. & E., 418; 14 A. & E., 930; 29 Pac. R., 321; 58 N. E. R., 786; 50 Am. St. R., 841; 119 Tenn., 530. *By refusing to supply or by refusing to enter into a contract:* 14 A. & E., 931; 111 Mich., 401; 45 Barb., 136; 30 A. & E., 418; 31 So. R., 32; 165 N. Y., 27; 44 Pac. R., 968; 14 L. R. A., 672.

November 16, 1908.  The opinion of the Court was delivered by

MR. JUSTICE JONES. The Paris Mountain Water Company, respondent, is a corporation under the laws of this State and is engaged in the business of supplying water to the city of Greenville and its inhabitants. The petitioner, Poole, is a citizen and resident of the city of Greenville and the dwelling occupied by him, No. 487 Coxe street, was connected by service pipe and meter with defendant's water mains. William A. Hamby was the owner of the dwelling, and water was supplied under a contract made between respondent and Hamby before petitioner became tenant. The petitioner became tenant of the house on January 24, 1907, and finding the water turned on used so much of it as he desired during the year 1907. About January 1, 1908, respondent presented petitioner with a bill for $65, based upon the quantity of water as registered by the meter at forty cents per one thousand gallons. The petitioner, claiming that the amount demanded was exhorbitant, refused to pay the same, but offered to pay $5, the flat rate provided in the schedule for "residences occupied by one family, five rooms," which was refused by respondent. Within ten days after presenting the bill respondent cut off the water supply from the premises. Respondent offered to adjust the account for twelve dollars, but petitioner refused to pay that amount. Petitioner demanded that respondent supply his premises with water, and offered to sign a contract for the year 1908, on a reasonable basis, and to pay the first quarter in advance, but respondent refused to supply him further with water unless he pay the amount demanded, reduced to twelve dollars.

This proceeding was begun in the Circuit Court to compel respondent to supply petitioner with water, and to execute a contract for the year 1908, at the rate of $5 per annum, the minimum rate fixed by the city ordinance, upon compliance by petitioner with the reasonable rules of respondent company.

Judge Klugh dismissed the petition, in a decree herewith reported, and the petitioner appeals.

Mandamus is an appropriate remedy to compel a public service water company to supply its customers with water, upon compliance with its reasonable rules and regulations.

The right of the company to adopt reasonable rules for the conduct of its business, and the duty of the customer to comply with such rules, is not and cannot be disputed. The rule adopted by respondent involved in this case is as follows: "All water rents shall be payable to the treasurer or other authorized person, at the office of the company, on the first day of January, April, July and October of each year. Should the water rent remain unpaid thirty (30) days from the date of bill, the supply of water may be cut off without notice, and the company shall have the right to sue for and recover the amount due for the time that water was furnished prior to cutting off supply."

In the absence of a statute making water rents a lien or encumbrance upon the premises, this regulation is not reasonable, so far as it may be construed to authorize cutting off water supply should a tenant refuse to pay delinquent water rents due by the landlord or former occupant, as this would coerce a person to pay the debt of another. *Turner* v. *Revere Water Company,* 171 Mass., 329, 68 Am. St. Rep., 432; *Burke* v. *City Water Valley,* 87 Miss., 732, 112 Am. St. Rep., 468; *Linne* v. *Bredes,* 43 Wash., 540, 117 Am. St. Rep., 1070, 6 L. R. A. (N. S.), 707. But with respect to a consumer, who is under an express or implied contract to pay water rents, it is reasonable to allow the company to protect itself by cutting off the supply from such consumer until he has paid delinquent water rents due by him. *People* v. *Manhattan Gas Light Company,* 45 Barb., 136; *Sheward* v. *Citizens Water Co.,* 90 Cal., 635, 27 Pac., 439; *Tacoma Hotel Co.* v. *Tacoma Land etc. Co.,* 3 Wash., 316, 28 Am. St. Rep., 35, 30 Encyc. Law, 2d Ed., 419, 420.

The petitioner used the water supplied, and he alleges that he was informed, on February 15, 1907, that he would have to pay the water rent, but that he did not know the conditions upon which respondent supplied said place with water; that he went to the offices of respondent to sign a contract therefor, and stood ready and willing at any time to sign a reasonable contract and to pay reasonable charges for what he used. The respondent alleged that it was not aware that petitioner occupied the premises until several months after January 1, 1907; that no application was made to it by petitioner for a contract far water service; that the water was supplied to the premises under a contract with the owner, Hamby; and that quarterly statements, or water bills, were mailed to said Hamby; and on information alleged that Hamby delivered these bills to petitioner. The petitioner, however, denied, under oath, that any such bills had ever been presented to him, either by Hamby or respondent. These circumstances, we think, justified the Circuit Court in holding that there was an implied contract by petitioner to pay reasonable charges for the amount of water consumed. We further agree with the Circuit Court that petitioner was bound to pay at meter rates. Section 7 of the franchise ordinance provided: "That the said water company should not charge to the consumers, during the existence of this franchise, exceeding the following maximum rates, but they shall have the right, at their option, at any time to insert a water meter into the service pipe of any consumer, and supply him at meter rates. No water shall be supplied to any consumer per year for less than $5." Then follows a schedule containing the flat rates, among other items: "Residence, occupied by one family, five rooms, $5." Then the schedule of meter rates, and among other items: "100 to 1,000 gallons per day, at rate of 1,000 gallons, 40 cents." Under this authority respondent had the right to subject petitioner to reasonable meter rates. *Charleston Light and Water Co.*

v. *Lloyd Laundry and Shirt Mfg. Co., post,* 475. The contention of petitioner, that he is only liable on the basis of the flat rate, and that he is entitled to a contract for the year 1908 at the flat rate, cannot be sustained.

The Circuit Court was also correct in holding that the reasonableness of the meter rates, as specified in the ordinance, was not questioned; and, in the absence of any adverse evidence, the rates fixed in the ordinance are presumptively reasonable.

We think, however, that the Circuit Court was in error in holding that the reliability of the meter was not questioned.

It is alleged that the house occupied by petitioner contained only four rooms; that his family consisted of himself, wife and three small children, aged seven, four and two years, respectively; that he owned no cow or stock of any kind to consume water; and that the consumption of water did not exceed thirty gallons per day. He further alleged, upon information received from a clerk of respondent, that the average water consumed by customers, in residences less than five rooms, is about eighty cents per quarter; and that the water rents of W. A. Hamby, who lived in an adjoining house of similar size to one occupied by petitioner, and kept a horse, does not exceed $1 per quarter; that petitioner is informed, and believes, that respondent has a great deal of difficulty with water meters, some reading fast and some reading slow, and that many complaints are made to respondent about exorbitant water charges. The respondent, in its return, admitted that the water meter "showed a large consumption, larger than respondent would have thought should exist," and respondent was willing to accept twelve dollars in settlement of a claim of $65, based upon the meter reading. It is true, respondent alleged, with supporting affidavits, that the meter had been tested and was accurate, and no leaks were discovered. On the other hand, there was no evidence of any wasteful use

of the water by petitioner's family. It is as easy to believe that there was some inaccuracy of the water meter, or some leak for which petitioner is not responsible, as to believe that petitioner, in the circumtsances stated, consumed over four hundred and fifty gallons of water per day after entering the premises. But this is not a suit upon the claim for water rents, and it was not incumbent on petitioner in this proceeding to establish the inaccuracy of the water meter. It is sufficient in this proceeding for petitioner to establish that at the time his water supply was cut off there was a *bona fide* dispute as to the correctness of the bill rendered for water rents, and this, we think, has been shown.

The Court realizes that caution must be observed here, and that heed be not given to trivial, captious, whimsical, unreasonable disputes as to meter registration, for, in the absence of a contrary showing, the meter is presumptively correct; but in this case we feel that the dispute is not only *bona fide,* but substantial and serious.

It appears that respondent made no demand on petitioner for water rent until January 1, 1908, when the bill for the year 1907 was first presented. This is the first act of respondent showing recognition of petitioner as liable for water rents. Petitioner then had the right to rely upon compliance by respondent with its own rule authorizing the cutting off of the water supply should the water rent remain unpaid thirty days from the date of the bill. The date of the bill in this case was January 1, 1908, and yet respondent cut off the water before the expiration of the time fixed by its rule. Hence, at the time of the commencement of these proceedings, and at the time of the judgment of dismissal, the respondent was acting in breach of its own rules in cutting off the water supply. Here, then, is the status. The respondent cut off petitioner's water supply, contrary to its rules, for non-payment of a bill which appeared to be exorbitant, and which petitioner in good faith and with show of reason disputed, and thereafter respondent refused to enter

into a contract to supply petitioner for the current year, except upon payment of the disputed bill.

While a public service water company has the right to cut off a consumer's water supply for non-payment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term. *State ex rel. Gwyn* v. *Citizens Tel. Co.,* 61 S. C., 98; *McEntee* v. *Kingston Water Co.* (N. Y.), 58 N. E., 785; *Weed* v. *City of Auburn* (Me.), 29 L. R. A., 376.

The inconvenience arising from subjecting the water company to the necessity of resorting to the regular courts to collect disputed claims is not to be compared to the hardship to the consumer, as a member of the public, involved in permitting the water company to be judge in its own cause, and to coerce the disputant into submission by denying him water.

The judgment of the Circuit Court is reversed and the cause is remanded, with instructions to issue a writ of mandamus compelling respondent to supply petitioner with water upon his complying with respondent's regulations, but without exacting payment of the disputed claim as a condition precedent.