13541

ARNOLD v. CAROLINA POWER & LIGHT CO.

(167 S. E., 234)

*Mr. L. D. Jennings,* for appellant,

*Messrs. Lee & Moise,* for respondent,

January 10, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The plaintiff brought this action, one for damages in the sum of $2,950, against the defendant, a public service corporation, engaged in furnishing electric current, because of the removal from plaintiff's place of a meter and cutting out the electric current service. The cause of action, according to the allegations of the complaint, was based on the theory that there was a bona fide dispute between the plaintiff and the defendant as to the amount due by the former to the latter on the account, and that the acts of the defendant in discontinuing the service, in such circumstances, were wrongful and unlawful.

The defendant denied generally the allegations of the complaint. In addition, it alleged that the monthly bill for

the service previously furnished to the plaintiff, to be paid not later than August 7, 1931, amounting to $8.90, was proper and correct, and, although so admitted to be by the plaintiff, he had not made, or tendered, payment therefor within the agreed time. The defendant admitted that the succeeding monthly bill, in the sum of $9.74, was erroneous, due to a mistake in the reading of the meter, which bill it corrected, and offered to correct, as soon as the matter was properly called to its attention. The defendant further said that the service had been discontinued because of plaintiff's failure and refusal to pay the admitted correct bill of $8.90, and not because of failure to pay the later bill for $9.74.

The trial, in the Court of Common Pleas for Sumter County, before his Honor, Circuit Judge Townsend, resulted in the granting of the defendant's motion for a nonsuit, and from the order thereon, the plaintiff has appealed.

The legal principles mainly applicable to the case here are found in the following decisions of this Court: *Poole v. Paris Mountain Water Co.*, 81 S. C., 438, 62 S. E., 874; 128 Am. St. Rep., 923. *Johnson v. Carolina Gas & Electric Co.*, 106 S. C., 447, 91 S. E., 734. *Benson v. Paris Mountain Water Co.*, 88 S. C., 351, 70 S. E., 897, and *Barret v. Broad River Power Company*, 146 S. C., 85, 143 S. E., 650.

It has been held in all of those decisions that a consumer of water or electricity, furnished by a public service company, has the right to the continuance of the service, pending the adjustment of a bona fide dispute as to the amount due on his bill for service. On the other hand, those cases hold that the public service company has the right to discontinue its service to the customer upon the non-payment by the customer of recent and just bills for the service furnished him, and has, also, the right to .refuse a further supply of electricity or water until those bills are paid. *Barrett v. Broad River Power Co., supra.*

Applying the declared principles to the present case, the correctness of the order of nonsuit depends upon the evi-

dence adduced at the trial favorable to the plaintiff's contention that the service was wrongfully discontinued at a time when there was a bona fide dispute of the bill claimed to be due by him to the defendant. A fair statement of the evidence, we think, is as follows:

The plaintiff had electric current furnished to the house in which he lived. He opened a shop for the repair of automobiles near his house about March 16, 1930. The electric current to the shop came through the same meter used for the house. His bill for electric service usually amounted from $1.60 to $1.80 per month. After operating the shop awhile, he put in a battery charger, not for the purpose of fully charging batteries, but to aid him somewhat in his work on automobiles. The electric current bill for the month ending July 25th, due under the contract to be paid not later than August 7th, amounted to $8.90. On complaint that the bill was excessive, a representative of the defendant company made an examination, and advised the plaintiff that the "charging outfit" had caused the great increase. The plaintiff seemed to be satisfied at the explanation. Asked, "Did you pay the bill then?" he replied that he did not, and "the reason I didn't pay it was that I just waited to see what the next bill was going to be, purposely." On August 7th, defendant notified plaintiff that, unless the July account of $8.90 was paid or arranged by August 12th "service will be discontinued without further notice." Pursuant to that notice the service was discontinued on August 27, 1931, payment not having been made.

The bill for the month ending August 25, 1931, amounting to $9.74, which defendant admitted to be a little excessive, was not past due on August 27th, when the service was discontinued, since the plaintiff had until September 5th to make payment. It is clear, therefore, that the notice that the service would be discontinued, given on August 7th, related to the bill for the month ending July 25th, and could have had no reference to the amount which would be due on August 25th.

If, therefore, the bill for the month ending July 25th, amounting to $8.90, was correct, due, and unpaid, and there was no *bona fide* dispute thereabout, under the cited decisions, the defendant company had the right to discontinue the service.

In addition to plaintiff's statement that he "purposely" waited beyond the time for payment, ten days after the due date of the bill, July 25, 1931, to make payment thereof, we find the following in his testimony:

"Q. That was the one you sent up about and he came to see about? A. Yes, sir.

"Q. And it was just shortly after that they came? A. Yes, sir.

"Q. You knew that bill was more than ten days due, and should have been paid, didn't you? A. Yes, sir.

"Q. But you had not paid it? A. No, sir.

"Q. And you didn't pay it? A. No, sir."

In reply to this question by the presiding Judge, "Have you ever paid the amount you say you are due them," the plaintiff replied, "No, sir."

Much has been said in the argument of appellant's counsel on the question of tender. It is maintained that there was a tender of the proper amount due by the plaintiff to the defendant, and, if there was no such proper tender, that tender was unnecessary, since it was clearly shown that the defendant would not have accepted the tender of the sum only claimed to be due by the plaintiff. A close examination of the evidence, favorable to the plaintiff, does not disclose that he ever tendered the amount of the July bill, or that the defendant indicated at any time that it would not accept such payment. The only evidence relating to tender in any way whatever, had reference to the August bill.

Under the cited decisions, the order of nonsuit was proper, and the granting thereof is affirmed.

Messrs. Justices Stabler, Carter, and Bonham concur.

### On Petition for Rehearing

Appellant has filed a lengthy petition for rehearing. Therein, there is quoted at length much of the testimony set forth in the transcript of record. Some of the important parts of the testimony, however, are not set out. The burden of the petition is that this Court fell into grievous error as to two important matters of fact in the opinion filed.

The first alleged error, is that the current was not cut off on August 27, 1931, as the Court said in its opinion. The second alleged error is that the service was not discontinued because of the failure to pay the bill admitted to be due on July 25th, but for failure of the appellant to pay the disputed bill due August 25th. The error last mentioned, if an error, relates back to the first alleged error.

As to the first alleged error, the appellant now says, which was not said in the brief it first submitted to the Court, the brief being silent thereabout, "The fact is  *  * * the respondent then, after September 9th, 1931, to wit, *on September 14th, 1931, discontinued the service.* *  *  *"  (Emphasis ours).

If there was error in the statement of the Court as to the time of the discontinuance of the service, if the discontinuance occurred, as appellant now says, on September 14, 1931, instead of on August 27, 1931 as the Court stated, the fault is not with the Court, but with the transcript of record as made up by the appellant. To sustain our conclusion that the record showed the date of discontinuance as being August 27th, and not September 14th, we point to the following matters appearing in the record:

The statement of facts, page 3, transcript of record, folio 1, shows that the action was commenced on September 16, 1931, by the service that day of the summons and complaint. The statement is very bare of facts, leaving the Court, as is so often done, to examine all the pleadings and much testimony to gather the essential matters involved in the appeal.

The complaint did not allege the exact day the service was discontinued. Therein, however, it was said, "And more than two weeks have elapsed since said current has been cut out." According to the complaint, drawn on or before September 16, 1931, the current had been cut out for "more than two weeks" previous to that day, therefore, it occurred, if the complaint was correct, about August 27, 1931. If the service was discontinued, as appellant now claims, on September 14, 1931, the language of the complaint was certainly misleading. If it occurred on September 14th, the suit was evidently hurriedly instituted, within two days or less from the time the "cut out" occurred. Perhaps the hurrying of the suit caused the pleader to become confused in his facts.

Let us see what the plaintiff testified as to the time when the service was discontinued. We refer to folio 58, page 17, of the transcript of record. The plaintiff, as a witness, was being examined in chief by his counsel. He was asked this question, "The lights were cut out about when?" To that plain question, the plaintiff replied as follows: "About the last part of August, somewhere about the 27th."

True, following the quoted answer to the last question, this statement, rather than a question, was put to the plaintiff by his counsel, "You allege in the complaint, I believe they say in the answer they cut it out on the 26th of September." Then the plaintiff replied to counsel's statement, not to his question, "Something like that." In counsel's somewhat mixed up statement to the effect that either the complaint or the answer showed that the "cut out" was on the 26th of September, we assumed on the first opinion, as we now assume, there was clearly an erroneous reference to the month for these reasons. The complaint did not allege a discontinuance of the service on September 26th, or any certain date; neither did the answer so allege. The complaint, served on September 16, 1931, alleged the "cut out" occurred "more than two weeks" previous thereto. If

the "cut out" did not take place until September 26th, as counsel stated to his client, when the client was a witness, then the action was instituted ten days before the service was discontinued. And, surely, the suit was not brought for a discontinuance of the service at least ten days before the discontinuance occurred. If the statement of counsel to the plaintiff on the trial, that the "cut out" took place on September 26th, was correct, then counsel is now confused in stating in the petition for rehearing that the "Cut out" occurred on September 14th.

The matter of the time the "cut out" occurred, evidently, was considered as one of some importance by the respondent, for, on cross-examination of the plaintiff, he went into it carefully, as the record shows. Mr. Lee, of counsel for the respondent, asked the plaintiff this question, "And then didn't you say when you were answering your counsel's questions, that the meter was taken out either August 26th or 27th?" The witness answered, "I told you I didn't know." The counsel pressed him with this question, "No, you said this, and I wrote it down. 'Lights cut off the latter part of August, I think the 27th.' Do you deny that?" Then the plaintiff replied, "I told you I didn't know. I could not be accurate enough to tell just when it was cut off." (folio 98, page 27, Transcript of Record.) It would seem, therefore, for some reason or other, the plaintiff was trying to "hedge" on his statement as to the time of discontinuance, but he did not succeed in doing so, which the respondent's counsel was attempting to fix as August 26th or 27th.

The appellant's wife, Celia Arnold, was his most important witness, and, in some of the transactions with the respondent company, she acted as the appellant's agent, paying bills, etc. On the direct examination of this witness, appellant's counsel asked her this question, "How long did the lights stay out, they took it out about what time?" the witness replied, "It was around in August, the last of

August, somewhere in there." (folio 185, page 49, transcript of record.)

We have read and re-read the testimony of the appellant, his wife, and his third witness, Mr. Lyman. We cannot find any statement on the part of either of these three witnesses that the service was discontinued on September 14, 1931. In neither the original brief of the appellant nor in his petition for rehearing are we pointed to any place in the testimony of either of these witnesses going to show that the cut off occurred on that day.

In the petition for rehearing, it is argued that a notice, which the respondent sent to the appellant, dated September 9th, showed that the service would be discontinued on September 14, 1931. That notice does appear in the record. It is a form notice. Several similar notices also appear. One dated March 25th was to the effect that the service would be discontinued on April 5, 1931. One dated April 25th gave notice that the service would be discontinued, if the bill was not paid, on May 5, 1931. One dated August 7th was to the effect that the service would be discontinued on August 12, 1931. The cut off, as shown by the record, followed this particular notice. Another was to the effect that the service would be discontinued on September 5th. This was a form notice, simply for the purpose of trying to collect the amount the appellant was due the respondent, which still had not been paid. The one dated September 9th, was, evidently, another effort to collect the unpaid account of the appellant. This is the particular notice to which the appellant now calls attention, which showed that the service would be discontinued on September 14th. The last of these form notices gave notice that the service would be discontinued on October 5, 1931, if the bill was not paid. Evidently, this was another effort on the part of the respondent to collect its unpaid account. Whatever the notices showed as to the intention of the respondent in the matter of cutting off, the fact is that the plaintiff's evidence showed that the cut off occurred on August 27, 1931.

In the petition for rehearing, this statement is made, "respondent has never contended that the service was discontinued on August 27, 1931." Evidently, appellant's counsel has not read, as carefully as we have read, the brief of respondent's counsel. If he had, he, perhaps, would not have fallen into the "grievous error" made by him. At the bottom of page 4 of respondent's brief the last three lines set forth this language, "that, pursuant to said 'disconnect notice,' the service was dicontinued on or about August 27, 1931. (Transcript folio 58)."

So, upon reconsideration, being bound by the transcript of record as to the facts of the cause, we are forced to conclude that, if there was "grievous error" in the opinion filed, as to the time when the service was discontinued, the fault is not with this Court. The fault is with the record and in the testimony of the appellant and his wife.

As before indicated, finding that the alleged error as to the date of the discontinuance of the service is not sustained by the record, the second alleged error does not become important. We may add, however, that upon further consideration of the entire record, we are more than ever convinced that the service was discontinued for not only the failure, *but the refusal,* of the appellant to pay in due time, according to the terms of his contract, as found by the Circuit Judge, the bill for the service admitted by him to be correct.

We regard this as an opportune time to say some things regarding petitions for rehearings, which, perhaps, we should have said a long time ago. The purpose of a petition for rehearing seems not to be fully understood by some members of the bar. Petitions of that character are allowed by the terms of rule 17 of this Court. The purpose of such a petition is to aid the Court in deciding correctly a case heard by it. The petition must show, according to the rule, "the points supposed to have been

overlooked or misapprehended by the Court." The purpose of a petition for rehearing is not to have presented points which lawyers for the losing parties have overlooked or misapprehended, and the purpose of a petition for rehearing is not just to have the case tried in this Court a second time.

Petitions for rehearing are filed in at least three-fourths of the cases decided by this Court. Many of them, we fear, some time, are filed just for delay. It is a rare thing when the Court grants such a petition. Usually, they are dismissed with a simple order to that effect, for the reason that they contain nothing but a "rehash" of what the losing party has said before, matters which the Court has already considered well and disposed of.

We especially call attention to the provision in the rule that the petition for rehearing must be accompanied by "a certificate from some counsel not concerned in the case that there is merit in such grounds" on which the rehearing is asked. We fear that too often "counsel not concerned in the case," out of the goodness of their hearts, as a favor to a brother of the bar, and without examination of the full record in the case, certifies "that there is merit in such grounds." The counsel who signs a certificate of that nature should not simply read the petition for rehearing. He should go further and study the transcript of record, the briefs of counsel, the decisions of the Court cited therein, the opinion of the Court, and the decisions referred to in the opinion. Counsel signing such a certificate should remember that the members of this Court, usually consisting of five justices, have read all these records and decisions, and together have considered in conference, often in many conferences, all of them, and that the sole purpose of the Court is to decide a case correctly. If "counsel not concerned in the case," after the Court has rendered its decision, asks the Court to review again the entire record and

briefs in a cause, then, in fairness to the Court, that counsel should do once at least what he asks the Court to do twice.

What we have said is a simple desire to aid the Court in expediting its work, and to end as early as reasonably possible litigation. Many hours, uselessly spent in the consideration of petitions for rehearing, could be well spent in disposing of cases pending for decision. We feel assured that by calling the attention of the bar to these matters, about which, perhaps, they have not thought heretofore, we will obtain their co-operation, for we are confident that the lawyers of South Carolina, as a whole, sympathize with the Court in its efforts to expedite the business coming before it.

The petition for rehearing in this cause is dismissed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER, CARTER, and BONHAM concur.