13869

BAILEY v. NORTH CAROLINA MUTUAL LIFE INS. CO.

(175 S. E., 73)

*Mr. L. D. Jennings,* for appellant,

*Messrs. Epps & Epps* and *George D. Levy,* for respondent,

June 12, 1934.

Petition for rehearing dismissed July 3, 1934.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

The appellant, a colored woman, had with the respondent, an insurance company, conducted by colored people, whose policyholders were also colored,

an insurance policy, issued on September 14, 1931, whereby the company, in consideration of a weekly premium of 15 cents, agreed to pay the appellant a maximum weekly benefit for disability from sickness or accident the sum of $1.50 per week, during the first six months after the policy was issued, and $3.00 per week thereafter, and upon the death of the insured to pay the named beneficiary the sum of $39.00. The weekly premiums were paid up to and including February 15, 1932. In the latter part of January, 1932, appellant became sick, suffering, so the certificate of the attending physician showed, from the disease of "southagitis," from which illness she was disabled for some time; her contention being for at least three weeks. The sick benefit of $1.50 for the first week was duly paid by the company, apparently without question as to its correctness. On February 11, 1932, J. C. Prioleau, the colored agent of the insurance company, paid the appellant $1.50, apparently the sick benefit for the second week. He gave her on that date a blank to be properly filled out for the third week sick benefit, to which she claimed she was entitled.

Alleging in her complaint the facts above stated, the appellant further alleged, in effect, which allegations we think set forth the gist of her complaint, that the insurance company was due her the sum of $1.50 for the third week's sick benefit, and that, by false and fraudulent representations, she was induced to sign a paper, which the company claimed to be a release and settlement in full of her policy, which "so-called release" was procured under false and fraudulent representations, for the purpose of avoiding the contract of insurance, and for the further purpose of cheating and defrauding appellant and her beneficiary out of the benefits they were entitled to under the terms of the policy. The fraudulent conduct of the agent occurred, as the complaint alleged, on February 11, 1932.

On February 15, 1932, as the complaint alleged, and as was also shown without dispute, the agent of the insurance

company collected the weekly premium then due on the policy, which kept it in force until February 22, 1932, and the policy all the time was in the possession of the appellant.

This action for $3,000.00 actual and punitive damages was instituted by the appellant on February 20, 1932.

The insurance company admitted the allegations of the complaint as to the issuance of the policy and its terms. It denied all the other allegations, including therein the claims of the plaintiff that the policy had been canceled prior to the date of the complaint, that there had been any release of the company's liability thereunder, and any fraudulent conduct on the part of the company or its agent.

In the trial, after hearing the evidence on the part of the plaintiff, a nonsuit was ordered, and from that action the insured has appealed to this Court.

The evidence for the company showed the receipt by her of the first two weeks' sick benefit, at the rate of $1.50 per week, and the offer and tender of the agent of the company to pay her, on the 22nd or 23rd of March, 1932, by the check of the company, the sum of .$1.50 for the third week's sick benefit, which check she declined to accept, for the reason that her rights had been then intrusted to her attorney. It also showed no payment, or offer to pay, of any premium on the policy after February 15, 1932. Testimony for the appellant went to show that Prioleau, the agent, told her at the times he was making the two payments of the sick benefits, in effect, that she was signing a receipt for the amounts he was paying; that he also told her that she could not collect sick benefits for more than four weeks in any one calendar year, although the policy provided for the payment for as much as twenty weeks' benefit in such year; and that he would cancel the policy. It was further disclosed that Prioleau, on February 18th, wrote the insured a letter, in which he said, "the release you signed the other day was in full settlement of your policy," and in that letter he told

the insured she had asked to be allowed to look the policy over for a day or so, and then she would send it in. He further advised her that she had only paid in $3.00, and the company had paid her $3.00 back, and held her receipt, along with the release, for the same. Upon receipt of that letter, the husband of the insured consulted her attorney, and placed the policy in his charge.

The papers introduced in evidence, signed by the insured, were receipts for the amounts of the sick benefit paid to her. No paper showing, or attempting to show, any release on the part of the insured to the company as to any right or claim she had under the policy was offered, and there was absolutely no evidence showing that she had ever executed any such instrument. There was no evidence tending to show that the policy issued to the insured had ever been marked canceled on the books of the company.

The fact that the insured still had the policy in her possession, and the receipt of the company for the weekly premium paid on February 15, 1932, which kept the policy in force for one week thereafter, clearly established the fact that the policy was in full force on February 20th, the day on which the suit was instituted.

The trial Judge, therefore, was clearly right when he ruled to the effect, on the motion for a nonsuit, that, at the time of the institution of the suit, the policy was in force, the insured had all her rights thereunder, and that if she had died during that time the beneficiary would have been entitled to receive the death benefit. There being no cancellation of the policy, and no release on the part of the insured of any right she had under its terms, there could not, therefore, have been any damage to the insured on that account. Since there was no cancellation and no release, it follows, of course, there could not have been any fraudulent cancellation, or any release executed on account of the fraudulent conduct of the agent of the company. Accordingly, there

was no evidence to sustain in any way the alleged cause of action for either actual or punitive damages, on account of the alleged cancellation of the policy, or the alleged obtaining of the release through fraudulent conduct and representations; and the nonsuit, so far as it affected those claims, was proper. See *Herndon v. Continental Casualty Co.,* 144 S. C., 448, 142 S. E., 648.

Since the defendant offered no testimony, we do not know what would have been said in the defense of itself or agent, if any defense was necessary. We judge of the facts entirely, therefore, from the testimony submitted in behalf of the appellant. From that testimony, especially the letter of Prioleau to the insured, we are rather inclined to think that Prioleau had in mind the commission of a fraudulent act. Realizing that, in all probability, his company was going to lose money on the policy carried by the insured, he probably conceived the idea of laying the ground for a cancellation of the policy and securing the consent of the insured to that course. The early institution of the suit, just two days after Prioleau's letter, gave him and his company notice in time that it would not be well for the fraudulent scheme to be carried out. If the insured had patiently waited for a few days, in all probability she would have had a good cause of action on account of the fraudulent conduct of Prioleau.

It is our opinion, however, that the nonsuit in its entirety was erroneous. There was evidence to show that the appellant was entitled to the sum of $1.50 on the third week of her illness. While the company, through Prioleau, after the commencement of this suit, offered to pay her that amount, the tender made was not a legal one, even if it had been made in time. While it appears that the policy contained a provision that no suit to recover thereon should be instituted prior to the expiration of sixty days after proof of loss had been filed in accordance with the requirements of the policy, a defense based upon that provision

was not interposed in the answer, and, even if there had been such a defense, there may have been some evidence of waiver of the provision on the part of the company. In addition, the trial Judge, in granting the motion for a nonsuit, did not pass upon the effect of that provision, or upon the matter of waiver in connection therewith. The appellant, we think, was entitled to have the jury decide whether or not she was entitled to the sum of $1.50, for which she also sued.

The judgment of this Court is that the order of nonsuit be reversed as to the plaintiff's claim for $1.50, and in other respects that it be affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

## ON PETITION FOR REHEARING

MR. CHIEF JUSTICE BLEASE: The appellant, seeking a rehearing, asserts that the Court in its opinion has based its conclusion upon an erroneous apprehension of two important facts.

The first is our statement to the effect that there were introduced in evidence receipts, signed by the insured, for certain sick benefits paid to her. The appellant says these receipts were not introduced. It now appears that, technically, the receipts were not really introduced. The record shows, however, that the receipts, or some receipts at least, were exhibited to the appellant by the counsel for the respondent, when the appellant testified as a witness, and she was examined fully as to her signatures to these papers, and as to their contents. If the receipts were not introduced, however, that fact had no effect on the conclusion we reached in the case. It was conceded by the appellant that $3.00 in sick benefits were paid to her, and she said she had signed receipts therefor.

Appellant's counsel now says that the Court committed error in saying that the last payment of a fifteen cents pre-

mium took place on February 15, 1932, which payment kept the policy in force until February 22nd, two days after the date of the commencement of the suit. He attempts to argue that the evidence shows that the last payment was made on February 9th, which payment would have carried the policy only to February 16th, and, therefore, the policy was not in force on February 20th, when the suit was commenced. The record does not bear out the contention made, and the petition for rehearing on that ground shows that appellant's counsel is not at all careful in the presentation of petitions to this Court. It seems, too, that the Court knows a great deal more about the facts of counsel's case than he knows. Perhaps his petition for rehearing, like the commencement of the suit, was gotten up in too great a hurry. We let the record speak for itself; the italics being supplied by us.

The third paragraph of the complaint, drawn by counsel for the appellant, is in this language: "That after said policy was issued, the plaintiff continued the payment of said weekly premiums, until the *15 day of February, 1932.*"

The last sentence in the fourth paragraph of the complaint is as follows: "That on *February 15th, 1932,* said agent came back and collected the premium then due on said policy, and receipted for same in plaintiff's receipt book."

In the six exceptions of the appellant's counsel, there is not a word to indicate that the last payment of premium was made on February 9th.

In the second exception, appellant's counsel said that the presiding Judge erred in granting a nonsuit, "when the testimony offered by the plaintiff had fully sustained *every allegation* in the complaint." In the fifth exception, the appellant's counsel "respectfully submitted" that there was error in granting the nonsuit, "when there was ample evidence to sustain *all of the allegations* of the complaint." The allegations of the complaint, as shown before, were to the effect that the weekly payments of premiums continued until *February 15, 1932.*

It is true that the appellant, Julia Bailey, when testifying, was quite indefinite as to the time the last payment was made; but she at no time testified that the last payment was made on February 9th. Counsel for the respondent, in cross-examining her, read two or three times allegations of the complaint, showing the last payment was made on February 15, 1932, and the witness did not question the correctness of the statement as to the date of payment.

Hattie Clark, a relative of the appellant, and her chief witness, testified positively, both on direct examination and cross examination, that she was present when the payment was made on February 15, 1932.

In his remarks granting the motion for nonsuit, the trial Judge said: "Under the allegations of the complaint, it is apparent that they collected the premiums for a week, fifteen cents, until *February 15, 1932,* which unquestionably kept the policy alive." No effort was made by counsel for the appellant to correct in the mind of the Judge his impression that the appellant claimed that the last payment of premium was made on February 15, 1932.

The Court does not look with favor upon petitions of this character. They uselessly take up time. It is earnestly hoped that no such petition will be filed again soon. We call to the attention of counsel for the appellant what was said about petitions for rehearing in the case of *Arnold v. Power Co.,* 168 S. C., 163, 167 S. E., 234.

The petition is dismissed.

Messrs. Justices Stabler, Carter and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.