Argued May 29, reversed and remanded with
instructions August 27, 1973

OLIVER ET AL, *Appellants, v.* HYLE ET AL,
*Respondents.*

513 P2d 806

*Glen H. Downs,* Legal Aid Service—Multnomah Bar Association, Inc., Portland, argued the cause and filed the briefs for appellants.

*Walter W. Yeager, Sr.,* Deputy City Attorney, Portland, argued the cause and filed the brief for respondents.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

This appeal presents a single issue: May the Bureau of Waterworks of the City of Portland terminate water and sewer service to tenants because they refuse to pay the service arrearages incurred at the premises by previous tenants?

The named plaintiffs[1] in this case are all tenants who were threatened with termination of water and/or sewer service when they refused to pay arrearages incurred by prior occupants. The plaintiffs sued on behalf of themselves, and "* * * a class of all per-

---

[1] This appeal is now moot as to plaintiff Welborn since she has moved, and the charges at her prior residence have now been paid in full.

sons similarly situated * * *,"[2] seeking declaratory judgment to construe and determine the constitutionality of Section 21.16.030[3] of the Code of the City of Portland, Oregon, and for injunctive relief to enjoin the defendants from proceeding under the section.

The trial court denied any relief to the plaintiffs, holding that the Code section was constitutional and that the defendants acted legitimately and within the terms of the Code. Plaintiffs appeal.

The parties stipulated to the facts, which may be summarized as follows:

All the named plaintiffs are tenants under month-to-month tenancies. In all cases, the tenant and landlord had agreed between themselves that the tenant would be responsible for water and sewer service charges. Water was running in all the premises when the plaintiffs inspected them and when they began occupancy. None of the plaintiffs had actual knowledge of service arrearages before beginning their tenancies.

At some point after moving in, all the plaintiffs received water and/or sewer service bills from the Bureau of Waterworks. In all cases some, or all, of the bills sent were for service rendered before the plaintiffs had moved in. All the plaintiffs have at all times offered to pay for water and/or sewer service furnished during their occupancies. However, the Bureau of

---

[2] Defendants demurred to the plaintiffs' complaint, in part, because of a "* * * defect in parties Plaintiff in that the Plaintiff does not show a basis for a class action and the owner[s] of said propert[ies are] not named as * * * part[ies]." The trial court overruled the demurrer, and the defendants do not raise this ruling as error on appeal.

[3] This and other relevant Code and Charter provisions are set out in the text.

Waterworks has refused tender of only this portion of the arrearages, demanding payment in full, and threatening termination of service absent such payment.

None of the plaintiffs, before moving in, notified the Bureau of Waterworks of the change in occupancy. In this connection it was stipulated:

"If notified and requested, it is the practice of the Bureau of Waterworks to take a meter reading and supply a statement for charges incurred for water service to a premises when a change in occupancy occurs."

It was further stipulated:

"* * * However, it is the practice of the Water Bureau to terminate water service *despite notice of the change in occupancy, or notice as to who is responsible for water charges* if bills for previous water and sewer service to the premises remain unpaid." (Emphasis supplied.)

The plaintiffs requested that the Bureau establish individual bill accounts in the plaintiffs' names, but the Bureau refused to do so. Normally, the Bureau sends bills to the address, and accounts are kept for the address. If requested, the Bureau will send bills to a different address for collection. However, the Bureau still regards the bill as an obligation of the property to which service was supplied.

The Bureau of Waterworks is the only source of water service in the city of Portland.

On appeal, as below, plaintiffs raise three basic arguments against the operation of Code Section 21.-16.030, and against the city's practice of viewing water and sewer service bills as an obligation of the property, rather than as the personal obligation of the tenant or owner who incurred the charges.

The plaintiffs first contend that, absent a lien, under general principles of common law the city may not attempt to hold one tenant liable for the water service debts of another tenant. The plaintiffs assert that only under a lien provision may the defendants validly treat unpaid water and sewer service bills as an obligation of the property.

The plaintiffs also rely on two constitutional grounds. The plaintiffs contend that the collection practices contravene both the equal protection clause of the Fourteenth Amendment to the United States Constitution, and Art I, § 20, of the Oregon Constitution. They also argue that the city's billing practices, which do not provide for a hearing on disputed bills, violate both the due process clause of the Fourteenth Amendment to the United States Constitution, and Art I, § 10, of the Oregon Constitution.[①]

■ We conclude that the practice of terminating water and sewer service to tenants because they refuse to pay the service arrearages incurred at the premises by previous tenants violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, and Art I, § 20, of the Oregon Constitution.

The general rule is stated in Annotation, 19 ALR3d 1227, 1232:

"Municipalities and public utility companies

---

[①] The Bureau of Waterworks, at the time of trial in this case, did not have a hearing procedure as to disputed bills. However, none of the plaintiffs requested a hearing from the Bureau. Still, the trial court ruled "* * * [t]hat when a bona fide dispute over payment for water service is raised by any person from whom collection is sought, it is incumbent that the defendant, [sic] offer a hearing to such persons seeking redress; that to refuse such a hearing would be violative of due process." The defendants do not appeal from the trial court's judgment on this point.

have frequently sought reimbursement of unpaid charges for utilities from the property served itself, or someone connected with the property, such as an occupant or owner, other than the one who incurred the charges. The conventional rule has been that liability for the debt of another cannot be imposed in the absence of special agreement or statutory authorization for a lien on the property, and ordinances or regulations seeking to impose such liability have usually been held unreasonable in the absence of an authorized lien * * *."

*See also,* 1 Priest, Principles of Public Utility Regulation 256 (1969) ; 12 McQuillin, Municipal Corporations § 34.92 (3d ed rev 1970) ; 2 Antieau, Local Government Law, Municipal Corporation Law 645-46, § 19.10, 650, 652, § 19.12 (1970) ; 94 CJS 218, Waters § 305 (b).

Numerous cases have affirmed this basic principle, and have held that, in the absence of a lien, or contract, a rule, regulation or charter provision is unreasonable and void when it seeks to impose a water service obligation onto someone other than the one who actually incurred the debt. *See, Alabama Water Co. v. Knowles,* 220 Ala 61, 124 So 96 (1929) ; *City of Covington, &c. v. Ratterman,* 128 Ky 336, 108 SW 297, 17 LRA (ns) 923 (1908) ; *La Nasa v. Sewerage and Water Board of New Orleans,* 184 So2d 622, *review denied* 249 La 197, 186 So2d 158 (1966) ; *Turner v. Revere Water Co.,* 171 Mass 329, 50 NE 634 (1898) ; *Burke v. Water Valley,* 87 Miss 732, 40 So 820 (1905) ; *Home Owners' Loan Corp. v. New Brunswick,* 124 NJ Eq 305, 1 A2d 854 (1938) ; *McMenamin v. Evesham Municipal Util. Authority,* 104 NJ Super 161, 249 A2d 21, *affirmed* 107 NJ Super 42, 256 A2d 801 (1969) ; *United States v. Springwood Village, Inc.,* 168 F Supp 885 (DC NY 1958) ; *Miller v. Wilkes-Barre Gas Co.,* 206 Pa 254, 55

A 974 (1903) ;[9] *Poole v. Water Co.,* 81 SC 438, 62 SE 874 (1908).

■ This basic rule is grounded in the principle that a public utility owes a duty to its customers to provide service subject only to *reasonable* rules and regulations. *See, Farmer v. Nashville,* 127 Tenn 509, 156 SW 189, 45 LRA (ns) 240 (1912). In the absence of a lien provision, a regulation, charter or code provision which seeks to hold someone liable for another's water debts, is unreasonable because such a provision "* * * would in effect give a lien on the property for the amount due which * * * [lien] the water company does not have." *Title G. & T. Co. v. 457 Schenectady Ave.,* 260 NY 119, 126, 183 NE 198, 86 ALR 347 (1932), *reh denied* 261 NY 536, 185 NE 728, *cert denied* 289 US 741, 53 S Ct 659, 77 L Ed 1488 (1933).

At oral argument, counsel for the defendants in this case conceded that only two decisions, both from Georgia, uphold the proposition that absent a lien provision a tenant's water service can be terminated because of another's water debts. Our research has confirmed that only these Georgia cases support the defendants' position here. *See, City of Atlanta v. Burton,* 90 Ga 486, 16 SE 214 (1892) ; *Harrison v. Jones,* 226 Ga 344, 175 SE2d 26 (1970).

We find the reasoning of the Georgia cases unpersuasive. *City of Atlanta v. Burton,* supra, which

---

[9] Pennsylvania at one time followed a different rule, holding that termination of service was reasonable irrespective of who incurred the debt and even in the absence of a lien provision. *See,* Girard Life Ins. Co. v. Philadelphia, 88 Pa 393 (1879); Beaver V. W. Co. v. Public Ser. Com., 70 Pa Super 621 (1918). However, the *Miller* case [Miller v. Wilkes-Barre Gas Co., 206 Pa 254, 55 A 974 (1903)] changed the rule, and, at least, implicitly overruled the prior cases.

is the leading Georgia case, reasoned that the city did not compel a citizen to use the city water system, and noted that private water supplies were available. In the instant case, the factual context is significantly different. Here, the stipulations of fact recite that the Bureau of Waterworks provides the only water system in the city of Portland.

We also note that recently a federal district court in Georgia has struck down charter and ordinance provisions which, absent a lien, authorized termination of service because of another's water debts. The court held that such provisions were violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Davis v. Weir,* 328 F Supp 317 (ND Ga 1971).

In the instant case the defendants do not claim a lien. The city Charter and Code provisions on which they rely are set out below:[©]

"Section 11-105. **Rates and Charges.** For each fiscal year the council shall fix water rates which will provide an estimated income to equal expenses and debt service relating to water bonds * * *.

"The council may fix special charges for connections, disconnections, turn-ons, discontinuances of service, all special services or work, and other contingencies, situations or conditions, which it finds advantageous or appropriate from time to time. Charges and bills may be adjusted as found just and equitable." Charter, City of Portland, Oregon.

"Section 11.106. **Collections.** The council may

---

[©] Sewer user service charges are collected by the Water Bureau, and "* * * [t]he city may establish procedures for collection * * *." Charter, City of Portland, Oregon, Section 11-302. *See also,* Code of the City of Portland, Oregon, Sections 17.36.100 and 17.36.110.

make regulations, impose conditions, penalties and forfeitures and institute civil or penal process it finds necessary or appropriate to collect bills for water or charges, and *in addition may refuse or discontinue water service to premises for which a bill or charge remains unpaid* \* \* \*." Charter, City of Portland, Oregon.

"**Water charged to premises.** All charges for furnishing water within the city and also premises outside the city served directly by the bureau of waterworks shall be chargeable to the premises where water is supplied. Where premises on which water bills are outstanding and unpaid are combined with other premises for a single use, the bills shall become a charge on the entire property."
Section 21.16.020, Code of the City of Portland, Oregon.

Section 21.16.030, Code of the City of Portland, Oregon, provides:

"**Delinquent water bills.** Whenever any charge for furnishing water to any premises shall not be paid within ten days after the same becomes due and payable, the manager in charge of the bureau of waterworks shall have authority to discontinue the service of water to the premises. Water shall not again be furnished thereto until all outstanding obligations for water supplied to such premises shall have been paid in full, and the charge for turning on such water shall be paid in advance, as provided in the annual water rate ordinance. The manager of the bureau of waterworks may in cases where he finds that lack of water is endangering health or causing great hardship, direct water service to be turned on prior to payment of outstanding water bills and/or service charge, but if the bills and charges are not paid within three days thereafter, then water service shall again be shut off and shall not thereafter be turned on until the bills, previous charges and an additional charge as

provided in the annual water rate ordinance have been paid in full."

The defendants here acted pursuant to the literal language of Code Section 21.16.030. However, city ordinances must be derived from statutory or charter authority. A city cannot "* * * by enacting a general ordinance of 'methods and procedures' * * * *enlarge,* restrict or repeal the express substantive provisions of its charter * * *." *Harder et ux. v. City of Springfield et al.,* 192 Or 676, 683, 236 P2d 432 (1951). (Emphasis supplied.)

The only Charter provision allowing for termination of water service is contained in Section 11-106, which provides that the city "* * * may refuse or discontinue water service to premises for which a bill or charge remains unpaid."

Certainly, this language does not create a lien, as the defendants concede. The Charter provision does not even *specifically* provide for termination of water service when someone other than the current tenant or owner incurred the bill or charge. "* * * The charter regulations in this respect, as in all others when the property of individuals is to be taken or incumbered without their consent, are to be strictly construed * * *." *Allen v. City of Portland,* 35 Or 420, 428, 58 P 509 (1899).

Strictly construing Charter Section 11-106, we hold that, by its terms, the provision is only a general authorization to terminate service when an owner or occupant is in arrears as to service provided during his occupancy.

In Oregon, as in other jurisdictions, a public utility must provide service subject only to *reasonable*

rules and regulations. *Kampstra v. Salem Hts. Water Dist.*, 237 Or 336, 391 P2d 641 (1964); *Kliks et al v. Dalles City et al*, 216 Or 160, 335 P2d 366 (1959).

As set out above, the overwhelming majority of jurisdictions which have considered the question have held that, absent a lien, a charter or ordinance, which seeks to hold a tenant liable for the water debts of a prior occupant, is unreasonable and void. We adopt this rule, and hold that the charter and ordinance provisions would be unconstitutional and void if they provided for such termination.[7]

■ However, as above, strictly construing Charter Section 11-106, we hold that it only provides for termination as to the water *consumer* who is in arrears. In so far as Code Sections 21.16.020 and 21.-16.030 may conflict with this interpretation, both are unauthorized by the Charter, and are unconstitutional and void. A municipal utility may not "* * * withhold its services in order to force the acceptance of arbitrary and confiscatory terms." *Kampstra v. Salem Hts. Water Dist.*, supra at 342.

Reversed and remanded with instructions to enter a judgment and decree in conformance with this opinion.

---

[7] At argument, and in the briefs, the defendants sought to establish the reasonableness of their current bill collection procedures by contending that any other procedure, such as the establishment of individual accounts, would substantially raise water service rates in Portland. However, even assuming the potential validity of this contention, at argument counsel for the defendants admitted that there was no factual evidence to show that water rates would increase under a different billing practice.