Argued April 28, affirmed May 19, 1975

PIAZZA, *Appellant, v.*
CLACKAMAS WATER DISTRICT ET AL
(No. 84397), *Respondents.*

535 P2d 554

470

*Diane Spies,* Portland, argued the cause for appellant. With her on the brief were Connall & Spies, Portland.

*Richard D. Roberts,* Portland, argued the cause for respondents. On the brief were Douglas L. Capps and Rankin, Walsh, Ragen & Roberts, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and TONGUE, Judges.

LANGTRY, J.

Plaintiff appeals from a declaratory judgment entered by the Clackamas County Circuit Court adjudging defendant Clackamas Water District to have acted reasonably in requiring him to pay the cost of installing a water main adequate to meet the needs of his industrial subdivision.

Duly organized under state laws, the Clackamas Water District is authorized to "supply, furnish and sell for any use any surplus water over and above the domestic needs of its inhabitants to any persons, corporations or associations * * *"[1] and to do all "acts and things which may be requisite, necessary or convenient in carrying out the objects of the district or exercising the powers conferred upon it * * *"[2] —including the promulgation and adoption of regulations concerning the use of water and the properties of the District.[3]

Rule 26 of the District's currently operative Rules and Regulations for Water Service (1971)—entitled "Maintenance and Replacement of Mains"—provides:

"The District will maintain and replace mains within the distribution system at its expense, provided the original installation was made by the District or with materials furnished or approved by the District."

Rule 27—entitled "Water Main Extensions"—provides in relevant part:

"The District as a whole will pay for the cost of supply, pumping stations, storage facilities and primary mains for the general distribution of water within the District, but it will not pay the cost of

---

[1] ORS 264.110.

[2] ORS 264.210.

[3] ORS 264.306.

main extensions to service additional customers, properties, tracts or sub-divisions. Such extensions, when requested, shall be paid for by the person or persons requesting such extensions, at actual total construction cost to the District; including direct and indirect expenses for materials, labor, equipment rental, planning, engineering, and inspection of construction, plus ten percent (10%) for District supervision and overhead * * *.

"* * * * *

"Persons paying for main extensions passing developed or undeveloped property owned by others, shall in accordance with the state law, be entitled to refunds whenever any such properties are served with water within a ten-year period following installation of the extension. The refunds made shall be based upon total front footage of the property served in proportion to the total front footage of all property abutting on the street in which the extension was made."

Although Rule 1 includes a definition of "Water Main,"[4] it supplies no guidance as to the significance to be attached to the terms "replace" and "extension" employed in Rules 26 and 27.

Early in 1973 plaintiff purchased a 15-acre tract of real property located within the District as a "future investment" with the idea of developing it into an industrial subdivision. No inquiry was made by plaintiff to the District as to the availability of a water supply adequate for that use, however, until after plaintiff contracted to sell a three-acre parcel of the tract to a third party. An initial application for water service was ultimately filed on June 28, 1973, plaintiff requesting a "hook-up" with an existing four-

---

[4] " 'Main' or 'Water Main' shall mean the pipe in the street, alley or right of way owned and maintained by the District for the purpose of distributing water to customers and servicing fire hydrants."

inch main running immediately adjacent to his land. On the grounds that water mains should be designed and initially installed to provide water for use and fire protection to a subdivision as it may be fully developed, the District's commissioners concluded that all existing mains available for use by plaintiff were inadequate and that no hook-up to them would be permitted. The commissioners conceded that implementation of what is designated as Phase B of the District's existing plan for the upgrading of its system would result in the enlargement of the mains at no cost to the plaintiff,[9] but determined that any modification prior to the scheduled upgrading would be treated as an "extension" of service under Rule 27, with the costs being imposed upon "the persons requesting such extensions." A resolution incorporating these findings and conclusions was adopted on July 10, 1973.

Plaintiff then initiated this action for declaratory relief in circuit court. He contended that the substitution of a larger main for a smaller one inadequate to meet the needs of a user necessarily constituted a "replacement" under Rule 26, and asserted that the action of the District was "arbitrary, capricious, inequitable * * * unreasonable * * * [and] contrary to the regulations." Noting that a "new service" would be provided to the plaintiff's property by the substitution of water mains, the circuit court determined the action of the District to be reasonable under its rules and issued a declaratory judgment requiring plaintiff to bear the cost of any such modification.

■ Commissioners of municipal corporations such as water districts enjoy broad discretionary powers in

---

[9] Phase B is scheduled to run from 1978 to 1990; the four-inch main immediately adjacent to plaintiff's land was scheduled to be replaced midpoint in the Phase, or 1984.

the exercise of their legislative functions—including decisions concerning the terms under which new customers will be served. They are, however, undeniably bound by their own rules and regulations. It is equally true that those rules and regulations must themselves be reasonable, *and* be applied in a reasonable fashion, if action taken by the corporation is to be judicially sanctioned. *Kampstra v. Salem Hts. Water Dist.*, 237 Or 336, 391 P2d 641 (1964); *Oliver v. Hyle,* 14 Or App 302, 513 P2d 806 (1973). Plaintiff does not challenge. any of the District's rules as unreasonable on their face, but argues that those rules were unreasonably and arbitrarily "interpreted" when the enlargement necessitated by his application was construed to be an "extension" rather than a "replacement." He takes the position that because the work contemplated falls squarely within a "forthright, succinct and clear" regulation—Rule 26—the District is obligated to provide service to his subdivision at its own cost. In response, the District points out that *both* Rules 26 and 27 are unambiguous[6] and that because the consequence of plaintiff's development was to add "new customers" to the system it was bound by the terms of Rule 27 to impose the costs of such "extension" upon plaintiff.

■ It is an elementary rule of construction that the failure of a statute or rule to define a term used therein calls for application of the term's natural, plain and obvious meaning.[7] Review of the plain and ordinary meaning of the terms "replace" and "extension" indicates that the District's rules are, when taken as a whole, sufficiently unambiguous to provide appli-

---

[6] In case of ambiguity, rules promulgated by a municipal corporation are construed in favor of the consumer. McQuillan, Municipal Corporations 264, § 34.121 (3d ed 1970).

[7] Blalock v. City of Portland et al, 206 Or 74, 291 P2d 218 (1955); Clatsop County v. Morgan, 19 Or App 173, 526 P2d 1393 (1974).

cants for service with guidance as to the manner in which its discretion will be exercised, and that the characterization of the main enlargement required in this case as an "extension" covered by the terms of Rule 27 was a reasonable one. "Replace" is generally defined to mean the "restoring to a former condition," or "the providing of an equivalent for," while an "extension" is acknowledged to be "a part constituting an addition to or enlargement of."[8] An "extension" is not, as plaintiff suggests, limited to the act of adding on to the end of a main, but may occur when a main is enlarged for greater capacity. Giving these words as used in the District's rules their ordinary meaning suggests that while the District itself has the responsibility of providing remedial service, that is, replacement for broken or worn out pipes, valves, etc., to its facilities at its own cost, any main "extension"—i.e., addition to or enlargement—made to serve "additional customers, properties, tracts or subdivisions * * *" may properly be billed to those requesting the additional service. It is of no consequence that in the course of scheduled maintenance and replacement the District may choose to "upgrade" its system by substituting a larger main for that "replaced." Where the enlargement is in response to a demand by one seeking to be added to the system, Rule 27 is specifically applicable.

Affirmed.

---

[8] *See* Black's Law Dictionary (4th ed 1968); Webster's New Twentieth Century Dictionary (unabridged 2d ed 1964).