# Birmingham Water Works Company v. Bailey.

### *Failure to Furnish Water.*

(Decided May 17, 1912.  59 South. 338.)

1. *Water and Watercourses; Public Supply; Damages.*—Where the action was against a water company for damages for cutting off plaintiff's supply because of the failure to pay a rate which was excessive, if no sprinkler arrangement was maintained on the premises and the undisputed evidence shows that there was no such attachment and that the plaintiff tendered the proper amount before the service was discontinued, plaintiff was entitled to the affirmative charge, although the tender was not made within the time during which the rules of the company require payment.

2. *Same.*—Where a water company demands water rents which are excessive and refuses the amount tendered until it can investigate concerning the sprinkler attachment, it is its duty to notify the consumer of the result of its investigation, or make a further demand for payment before cutting off the water.

3. *Same; Excessive Recovery.*—A verdict for $400 against a water company for cutting off a consumer's water supply and depriv-

[Birmingham Water Works Company v. Bailey.]

ing his family of the use of said water for five or ten days is excessive, a reasonable verdict being $200.

4. *Appeal and Error; Harmless Error; Instructions.*—Where the plaintiff was entitled under the evidence to the affirmative charge, a refusal to defendant of charges going to the right of recovery is harmless.

5. *Damages; Remittitur.*—Where the judgment is deemed by the Appellate Court excessive, it may, under Acts 1911, p. 587, require a remittitur of damages, and on agreement filed by plaintiff remitting such damages, will affirm the case, otherwise may enter a reversal.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by William T. Bailey against the Birmingham Water Works for damages for cutting off his water supply. Judgment for plaintiff for $400. A remittitur of damages in the sum of $200 was ordered, and being accepted by both parties by writing filed, the case is affirmed.

LONDON & FITTS, for appellant. Counsel discuss the errors assigned but without citation of authority except to the proposition that it was the duty legally and morally of the one injured to reduce the damages as much as possible, and to render the injury and loss as small as possible, which in this case could have been done by the payment of $1 extra.—*Murrell v. Whiting,* 32 Ala. 54; *Benzinger v. Miller,* 50 Ala. 206; *L. & N. v. Sullivan Co.,* 138 Ala. 379; *Dryer v. Lewis,* 57 Ala. 556; *Lilly v. Fletcher,* 81 Ala. 234; *Ashley v. Tel. Co.,* 64 Pac. 766.

GASTON & PETTUS, for appellee. On the undisputed evidence plaintiff was entitled to the affirmative charge as to his right of recovery, and any error in refusing charges requested by defendant going to plaintiff's right of recovery was harmless. The verdict was not excessive.

PELHAM, J.—The case went to the jury in the trial court on one count of the appellee's complaint, whereby a recovery was sought against appellant for damages for the breach of a contract to furnish appellee water at his residence in the city of Birmingham for domestic uses for a certain quarter of the year 1908; the appellant being engaged in the business of supplying water to the inhabitants of that city. The appellant filed a plea of the general issue.

The facts were practically undisputed, and were in substance as follows: The plaintiff, Bailey, moved into the residence in question in January, 1908, and paid the water company in advance $4.50 for the current quarter's water service for the months of January, February, and March. The plaintiff being an employee of a railroad company, whose duties kept him away from the city, and were such as not to permit his being at home more than once a week, a friend, one Ellison, as agent for the plaintiff, paid the plaintiff's water rent on these premises for the next quarter; that is, for the months of April, May and June. At the time Ellison, as the agent of the plaintiff, and during his absence, paid the water rent, the company required payment at the rate of $5.50 per quarter, claiming that there was a sprinkler connection, or attachment, on the premises, and that the rate with the sprinkler was $5.50 per quarter. Ellison protested and informed the company's agent that there was no sprinkler on the place, but paid the quarter's rent at this rate upon the defendant's agent stating that the matter would be investigated; something being said about refunding the difference after the investigation was made. During the next quarter, and after the water rent for that quarter became due (being payable quarterly in advance), the plaintiff, through his friend as agent, and subsequently in person with Ellison, offered

to pay the defendant company the rent for the current quarter, including the months of July, August, and September, at the rate of $4.50 per quarter, which was confessedly the correct amount under the rating made by the company for the premises occupied by plaintiff, if there was no sprinkler attachment on the premises. The company refused to accept this amount, but demanded payment at the rate of $5.50 per quarter, contending that there was a sprinkler on the place that must be included and paid for. Plaintiff informed the company's agent that he did not have or use a sprinkler, and that there was none on the place. The evidence of the plaintiff, as set out in the bill of exceptions, on this point is as follows: "We [plaintiff and Ellison] offered the rent, and they would not take it on account of my not paying for the sprinkler. I told them I did not see any use of paying for something I did not have any use for and was not there. I offered the $4.50, and they would not take it; said they would have to investigate the matter; and I said, 'All right,' if they had to do it." This conversation occurred on Monday, and on the following Friday (August 14th) the water was cut off by the defendant, without further notice or communication between the parties.

The evidence showed, without conflict, that there was no sprinkler attachment on the premises, and that the proper charge, under contract, was at the rate of $4.50 per quarter. On the undisputed evidence, the contract, as declared upon in the first count of the complaint, and a breach thereof, is clearly shown, and the plaintiff was entitled to the affirmative charge.—*McCleskey & Whitman v. Howell Co.*, 147 Ala. 573, 42 South. 67; *Cathcart v. Webb & Morgan*, 144 Ala. 559, 42 South. 25.

It makes no difference, under the facts and pleadings as disclosed by the record in this case, that the com-

pany's rule requires payment during the first 10 days of each quarter. The plaintiff tendered the proper amount before the service for the quarter was discontinued, and the company refused to accept payment for the expressed reason that the sum offered was not at and for the higher rate, which rate it was not authorized, under the contract, to charge, as it included a fixture or service that had not been furnished. And, too, the defendant, after refusing the sum offered until and for the purpose of making an investigation to see if there was a sprinkler on the premises, was under the duty to notify the plaintiff of the result of its investigation, or make further demand for payment, before cutting the water off.

From what we have said, it will be seen that there is no merit in the appellant's assignments of error, based on the written charges asked in behalf of the defendant and refused by the court. When the plaintiff is entitled to the general affirmative charge, refusing charges for the defendant, if error, is without injury.—*Jones Cotton Co. v. Snead,* 169 Ala. 566, 53 South. 988; *Birmingham Ry. Co. v. Rutledge,* 142 Ala. 195, 39 South. 338; *Bienville Water Supply Co. v. City of Mobile,* 125 Ala. 178, 27 South. 781; *Johnson v. Phila. Mfg. & Trust Co.,* 129 Ala. 515, 30 South. 15, 87 Am. St. Rep. 75; *McAlester Mfg. Co. v. Florence C. & I. Co.,* 128 Ala. 240, 30 South. 632.

The jury having returned a verdict of $400 in favor of the plaintiff, the defendant moved the court to set the verdict aside, assigning, among other grounds, that the verdict was excessive. The court's action in overruling the motion is assigned as error, and insisted upon here. The evidence tending to prove the amount of damages suffered, and the attending circumstances showed that the services appellant had contracted to furnish appellee

in the house occupied by him included pressure service for one ordinary opening for general domestic purposes and for one bath tub and one water-closet. The period during which plaintiff was deprived of the use of the water is indefinitely shown to have been between five and ten days. The plaintiff's family consisted of his wife and two children, and his wife was sick at the time the service was discontinued, and, because of the inconvenience of not having water, she left the place and went to her brother's house in Avondale. The plaintiff was engaged at his work away from home at the time. The neighbors offered to supply plaintiff's wife with water; but she refused on account of some fancied trouble she imagined she would involve herself in by accepting.

The court charged the jury that plaintiff could only recover compensatory damages, and that it was plaintiff's duty to use ordinary care and reasonable diligence to prevent and minimize the damage accruing from the defendant's wrongful breach of the contract. The right of recovery was limited to exclude any consideration of punitive damages by the jury.

We have carefully considered the evidence, and, construing it, under all the circumstances, in the light most favorable to appellant in all of its tendencies, we are of the opinion that $200 would be a fair and reasonable—in fact, an ample and liberal—allowance to award plaintiff for his actual damages proximately and naturally caused by the wrong, and for all damages flowing out of the breach of the contract recoverable, under the issues presented to the jury, as a natural result thereof; and that that sum would be the maximum amount that could be fairly and reasonably assessed, under all the facts and circumstances of this case, as the natural and proximate consequences of the defendant's breach of

the contract. We are not unmindful that the law has never undertaken to control juries in estimating damages for the breach of a contract; but courts have laid down certain rules for the guidance of juries in assessing damages for the breach of a contract; and when these rules are not followed the court, upon hearing a motion for a new trial, may, in the exercise of its judicial discretion, order a new trial to be had, unless the plaintiff elect to remit a certain part of the verdict.—*Kennon v. Gilmer*, 131 U. S. 23, 9 Sup. Ct. 696, 33 L. Ed. 110; *Stephenson v. Mansony*, 4 Ala. 317. The power of the trial court to set aside a verdict as excessive, on motion seasonably made, is not to be questioned; and, acting under the provisions of the statute, approved April 21, 1911, (Acts 1911, p. 587), we are of the opinion that there is no other ground of reversal presented in this case than that the judgment of the lower court is excessive; and, as we deem it to be excessive, and are of the opinion that the sum of $200 would be a just and proper amount of recovery, unless the appellee file a remittitur of the amount of the judgment recovered in excess of $200 within 30 days, this case will be reversed and remanded. The clerk of this court will notify the appellee of the ruling made by this court, and that he is required to file a remittitur of the excess within the time required, under penalty of a reversal of the case, as provided by statute.

Remittitur of part of damages recovered ordered.