[Civ. No. 2100.  Third Appellate District.—January 3.0, 1920.]

## JOHN J. FAY, Respondent, v. W. W. COX, Appellant.

[1] NEGLIGENCE—ACTION FOR DAMAGES—PROXIMATE CAUSE OF LOSS —PLEADING.—In an action for damages the mere allegation of negligence on the part of defendant and the loss of property by plaintiff would not charge the former with responsibility for the damage, unless it appear expressly or by fair intendment that said negligence caused or contributed to said loss.

[2] ID. — NEGLIGENT CONSTRUCTION AND OPERATION OF ENGINE — DESTRUCTION OF GRAIN — PLEADING — ANTICIPATION OF DEFENSE. — Where it does appear from the complaint in an action for damages for the destruction by fire of a ripened crop of barley that the fire was the result of the negligent construction and operation of defendant's engine and that the fire destroyed plaintiff's grain, the causal connection between the negligence and the loss is expressly, though concisely, shown.  The plaintiff is not required to anticipate or negative any defense that might be urged as to an intervening agency.

[3] ID.—ISSUE TENDERED BY ANSWER—TRIAL ON MERITS—ABSENCE OF PREJUDICE—DEFECT OF PLEADING IMMATERIAL.—Where a complaint is defective in that it does not expressly allege that the negligence of defendant was the proximate cause of the injury complained of, but such issue is raised by the answer of the defendant, and the case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled defendant to his injury, the matter of pleading becomes unimportant.

[4] ID.—ORIGIN OF FIRE—PROBABLE ABSENCE OF LIABILITY—REVERSAL ON APPEAL.—To warrant the reversal on appeal of the judgment in favor of the plaintiff in an action for damages for the destruction by fire of a ripened crop of barley, it is not sufficient that the appellate court find that the origin of the fire could be reasonably attributed to a condition for which no liability on the part of the defendant attaches, but before it is authorized to interfere it must be satisfied that it is entirely unreasonable to attribute it to a condition imposing such liability.

[5] ID.—DESTRUCTION OF CROP—MEASURE OF DAMAGES—ERRONEOUS RULING AND INSTRUCTION—ABSENCE OF PREJUDICE.—In such

2.  Proximate cause and intervening condition, note, 1 Ann. Cas. 230.

5.  Damages recoverable for loss or injury to growing crops, notes, 6 Ann. Cas. 949; 12 Ann. Cas. 782; 12 L. R. A. (N. S.) 267; 23 L. R. A. (N. S.) 310; 27 L. R. A. (N. S.) 168; 37 L. R. A. (N. S.) 976; 49 L. R. A. (N. S.) 415.

action, the error of the trial court in permitting the plaintiff to introduce evidence of the value of the grain at dates other than the date of its destruction, which was higher then than at the latter date, and in instructing the jury that in arriving at the market value of the grain they "have the right to determine what grain of the same kind and similar quality was selling for in the market in the vicinity where said crop was grown at the time of its destruction or within a reasonable time thereafter" was without prejudice where the verdict of the jury was for an amount not only less than the value of the grain based on the lower rate but also less than the value thereof as admitted in the answer, after subtracting the cost of harvesting and marketing.

APPEAL from a judgment of the Superior Court of Stanislaus County. W. H. Langdon, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. J. Maddux, G. A. Ditz and Goldman & Altman for Appellant.

Ostrander, Clark & Carey for Respondent.

BURNETT, J.—Plaintiff and defendant owned and occupied adjoining tracts of land in Stanislaus County. On the morning of June 7, 1916, a fire started on the ranch of defendant, subsequently spreading to that of plaintiff on the south, and destroyed about 150 acres of standing ripened barley, which plaintiff alleged was of the value of $4,464. Plaintiff claimed that defendant, by reason of his negligence, was responsible for this destruction of the grain. The theory of the contention is found in the following allegation of the complaint: "That on the seventh day of June, 1916, the defendant above named was the owner of a certain steam traction engine, which he was at said time operating by and through his agents and employees, acting in the course of their employment, in the harvesting of a certain crop of ripened grain, belonging to defendant, situated upon section 19 of said township and range, and adjacent to the said unharvested crop of barley belonging to plaintiff. That on said date by reason of the negligent and careless operation of said traction engine by the said agents and employees of said defendant and by reason of its defective condition, and defendant's failure

to keep it in proper repair and to equip it with adequate devices to prevent the escape of fire or sparks from the smokestack, ash-pan, fire-box and other parts of said engine, and the use by defendant of defective and improper appliances and material in and upon said traction engine, the stubble and dried grass and other inflammable matter in which said engine was then being operated was set on fire by burning material which escaped from said traction engine by reason of the said negligence of defendant and his said agents and employees. That said fire then and there spread to the plaintiff's said crop of unharvested barley and entirely destroyed it."

The jury found a verdict for plaintiff in the sum of $2,066, and the appeal is from the judgment rendered upon said verdict in favor of said plaintiff for that sum.

The points urged for reversal by appellant are: "(1) That the complaint fails to state a cause of action; (2) that the evidence is insufficient to support the verdict: (3) that the court erred with reference to the admission of testimony and in instructing the jury upon the measure of damages."

[1]   The attack upon the complaint is directed to the asserted failure "to allege either directly or inferentially that the destruction of plaintiff's grain proximately resulted from the negligence of defendant as herein alleged." Manifestly, the mere allegation of negligence on the part of defendant and the loss of property by plaintiff would not charge the former with responsibility for the damage. It must appear expressly or by fair intendment that said negligence caused or contributed to said loss. This, of course, is fundamental and the principle is stated in *Smith* v. *Buttner,* 90 Cal. 95, [27 Pac. 29], as follows: "It is well settled that negligence may be charged in general terms; that is, what was done, being stated, it is sufficient to say it was negligently done, without stating the particular omission which rendered the act negligent. But it must appear from the facts averred that the negligence caused or contributed to the injury." In his closing brief, appellant disclaims any contention "that plaintiff was required to use the words that the injury complained of was the proximate result of the negligence alleged," but he insists that any possible intervening agency, which would excuse the original act of neg-

ligence, should have been eliminated. He does not suggest
the phraseology by which this might be made to appear, but
declares that "the complaint should have in some manner
alleged that the negligence of defendant was the proximate
cause of the injury complained of."

[2] It may be that in this respect the complaint could
have been improved, but we think the criticism of appellant
is somewhat hypercritical. It certainly does appear that
the fire was the result of the negligent construction and
operation of defendant's engine, and that this fire destroyed
plaintiff's grain. The causal connection between the negli-
gence and the loss seems thus to be expressly though con-
cisely shown. Plaintiff was not required to anticipate or
negative any defense that might be urged as to an inter-
vening agency.

[3] Moreover, any such defect, if existing, was rendered
entirely harmless by reason of the allegations of the an-
swer tendering such issue and the fact that the issue was
fully tried.

In said answer it was denied "that on said date, or any
other time, by reason of the negligent or careless, or any
operation of said traction or any engine, by the said or
any agents or agent, or employees or employee, of said
defendant, or at all, the grain or any part thereof, of the
plaintiff was destroyed by fire"; or "that by reason of de-
fendant's failure to keep the engine in proper repair, or at
all, or its defective or any condition, or to equip it with
adequate or any devices, or to prevent the escape of fire
or sparks from the smoke-stacks, ash-pan or fire-box, or other
or any parts or part of said engine, any grain of the plain-
tiff was destroyed."

The point is covered by the decisions of the supreme court
in *Sampson* v. *Hughes,* 147 Cal. 62, [81 Pac. 292]; *Santa
Rosa Bank* v. *Paxton,* 149 Cal. 195, [86 Pac. 193]; *Grossetti*
v. *Sweasey,* 176 Cal. 793, [169 Pac. 687].

We quote from the last of these as follows: "And the
matter of pleading becomes unimportant when a case is
fairly tried, as this one apparently was, upon the merits and
under circumstances which indicate that nothing in the
pleadings misled appellant to its injury."

As to the second point, it is not disputed that the fire
started on defendant's premises and spread rapidly to the

barley field of plaintiff and soon destroyed his grain, there being a strong north wind at the time. Furthermore, it is a fair inference that this fire was caused by sparks from defendant's engine, and that it was traceable to his negligence as alleged in the complaint. The fire originated in a pile of straw, a short distance from the uncut grain, and was discovered a few moments after the engine had passed the point. The situation was such that any other reasonable inference could hardly be drawn than that the fire came from the engine. This was the only apparent cause and, it may be added, that no effort was made to show that it might have originated from any other source. It is true that there is a conflict of evidence as to the distance of said pile of straw from the course of the engine, but, manifestly, we must accept that which harmonizes with the verdict, and, so regarding the case, it seems quite rational to conclude that the fire came from the engine.

As to the element of negligence, it appears that there was no spark-arrester on the engine and from certain testimony, which we cannot say is inherently improbable, the jury was justified in concluding that, if said engine had been so equipped, the fire would not have occurred, and that the exercise of ordinary care required the use of said arrester on the part of appellant. Here again the evidence is strikingly conflicting, the defendant having made an impressive showing, but we must follow the evidence for respondent. In this connection we may remark that immediately after the fire the defendant secured an arrester for his engine—a circumstance of no inconsiderable significance.

Again, when Mr. Fay arrived on the scene, the engine was standing still and whistling for the water-wagon, but it soon started to meet the latter and "it strung a string of fire all the way until he met Mr. Cox with the water-wagon." It is a fair inference that this fire in the stubble extending for several hundred feet caused or at least contributed to the destruction of plaintiff's grain. It was for the jury to say, also, that it was an act of negligence for the defendant's employees in this manner to drive across the field with the fire thus dropping from the engine. It may be added that there was evidence that the fire-box was defective. In fact, plaintiff testified that defendant admitted as much and thus accounted for the fire. But whether

this was true or whether the wheels picked up burning straw and thereby scattered the fire as claimed by appellant, we cannot hold the inference to be unfair that such conduct constituted negligence.

Both these theories were set forth in the complaint; they find support in the evidence and singly or together they warrant the finding in favor of plaintiff. (*Sampson* v. *Hughes, supra.*)

[4] Appellant apparently conceives it to be the duty of this court to reverse the judgment if "the origin of the fire could be reasonably attributed to a condition for which no liability attaches"; but the truth is that before we are authorized to interfere we must be satisfied that it is entirely *unreasonable* to attribute it to a condition imposing liability. It is not sufficient if a finding in favor of appellant would be rational, but we must be satisfied that the opposite finding is irrational. We cannot say that such is the case.

[5] The third point grows out of the fact that the court permitted respondent, over the objection of the appellant, to prove the highest market value of barley during the month of June, 1916, and that the court instructed the jury as follows: "In measuring the damage, you will determine from the evidence the proper yield and market value of the crop and deduct therefrom the cost of harvesting and marketing the same, and in arriving at the market value, you have the right to determine what grain of the same kind and similar quality was selling for in the market in the vicinity where said crop was grown at the time of its destruction or within a reasonable time thereafter." In this connection the claim of appellant is that the damage to the innocent party is measured by the actual loss sustained by him at the time of the destruction of his crop, and that the jury had no right to speculate as to any possible increased value that might have accrued to plaintiff had he held his grain throughout the month of June. Appellant claims that the rule is, as stated in *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942]: "The true measure of damage for the total destruction of a growing or standing crop is the value of the crop in the condition it was *at the time* and place of destruction." As to the values,

the evidence shows that on June 7 barley was worth $1.20 a bushel, whereas, the highest price in June was $1.31¼. It is the claim of appellant, therefore, that the jury may have adopted the latter figure, to the prejudice of appellant. The trial court probably misapplied the language of the supreme court in the Teller case, *supra*, wherein it said: ''The true rule in arriving at the value at the *time* of destruction is that laid down by the trial court and abundantly supported by authority. The supreme court of Utah well states the proposition (*Lester* v. *Highland Boy Gold Min. Co.*, 27 Utah, 470, [101 Am. St. Rep. 988, 1 Ann. Cas. 761, 76 Pac. 341]): 'In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury or destruction, the expense of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops. And,' proceeds the court, 'while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction.' '' In other words, it is proper to consider the market value at the time or *about* the time, but this is for the purpose of determining the value *at* the time of the destruction.

But it is perfectly apparent that this error was without prejudice, for the reason that all the evidence shows that at the lower rate the damage was in excess of the amount awarded by the jury. The total yield from the 155 acres at twenty sacks per acre would be 3,100 sacks, weighing 108 pounds a sack and at $1.20 per cwt., the value would be $4,017.60. The entire cost of harvesting and marketing, according to the evidence, would be $942.40 and the net value would be $3,075.20. Or if we take the lowest estimate of the yield, eighteen sacks to the acre, the net value would be $2,674.44. Moreover, it was admitted by the answer that the value of the grain was three thousand dol-

lars, the language being: ''Denies that said crop of barley was at the time of its destruction as set out in the complaint or otherwise, of the reasonable value of $4,464 or any other amount over and above the sum of three thousand dollars.'' Even if we subtract from this sum the cost of harvesting and marketing the balance would be in excess of the jury's award.

We think that under well-established principles we are not authorized to disturb the judgment and it is, therefore, affirmed.

Hart, J., and Ellison J., *pro tem.*, concurred.