[Sac. No. 4989. In Bank.—February 24, 1936.]

E. C. SCHULTZ, Respondent, v. TOWN OF LAKEPORT (a Municipal Corporation) et al., Appellants.

Lovett K. Fraser for Appellants.

Louis Bartlett for Respondent.

THE COURT.—The plaintiff sued the defendants for damages alleged to have been suffered by reason of the shutting off of water from his residence. The plaintiff had judgment in the sum of $450. The defendants appealed.

The defendant town, hereinafter referred to as the defendant, operated a municipally owned system for supplying water to its inhabitants. The plaintiff devoted one-fifth of an acre of his residence lot to the cultivation of fruit, vegetables, flowers and bulbs, and a small lawn. About April, 1927, he commenced taking water from the municipal water supply for irrigation and household uses. The minimum charge for water service was $1.50 per month. Water was supplied to the plaintiff through a meter. An ordinance in effect at the times herein mentioned provided for the shutting off of the water supply for nonpayment of the water rent.

From the time the plaintiff commenced taking water until June, 1932, a period of more than five years, he received no bills for water consumed and made no tender of payment of water rents. About June 1, 1932, the city auditor reported the list of delinquent water users which showed the plaintiff in arrears for water supplied to his residence in the sum of $129.65, and the plaintiff was accordingly notified. He resisted payment of the amount claimed to be due and appeared before the town council in meeting, at which time he tendered his check in payment of his May, 1932, account. He declined to pay the balance on the ground that he was financially unable to do so and that he did not know he was liable therefor because he thought the person from whom he purchased his residence had been paying the water bills. He also claimed that a portion of the account was barred by the statute of limitations. On July 15th the council refused the plaintiff's tender and at the same time notified him that, provided he sign an agreement to pay the arrearages in twelve equal monthly instalments, and pay the first instalment within ten days, service would be continued, otherwise the water would be disconnected. The plaintiff did not tender any payment pursuant to that notice and the water was disconnected on August 2, 1932. On the same day the town of Lakeport commenced an action in the justice's court to recover from the plaintiff herein the sum claimed by it amounting to about $129, for water served to his residence to June 1, 1932. On August 6th the plaintiff demanded restoration of water service and tendered to the council the amount due for service during May, June and July, 1932, which the council refused to accept. On September 10th the plaintiff again made a tender of the amounts due for water from May to the time the water was shut off and demanded restoration of service. This tender was likewise refused.

In the action filed in the justice's court it was ruled that the town of Lakeport failed to prove a book account, and that the claim, with the exception of the amount due for the period of two years prior to the commencement of the action, was barred by the statute of limitations. Judgment was rendered for the town for the sum of $36.69 for water furnished to Schultz at his residence during the two-year period. Schultz subsequently paid the sum of $36.69 to the council

and water service at his residence was resumed on October 16, 1932.

Schultz brought this action against the town of Lakeport in September, 1933, for damages in the sum of $662.15 alleged to represent the loss or destruction of various vegetable plants, fruit vines, flower plants, bulbs and a lawn, by reason of the alleged wrongful discontinuance of the water service, and $26.50 for hauling of water in cans to his residence during the period when the service was disconnected. The court rendered judgment against the defendants for the sum of $450 as compensation to the plaintiff for both items of damage.

Three grounds of error in the trial court's findings in the light of the record presented are claimed. It is contended that the defendant had the right pursuant to the ordinance to discontinue the service of water for the nonpayment of the water rent. Secondly, it is contended that, if the defendant did not have such right in this case, the plaintiff should have minimized or averted the damage ensuing upon a discontinuance of the service by paying the amount due without conceding its correctness and suing to recover the overpayment, or by bringing an action for an injunction to restrain the shutting off of the water pending a determination of the amount due. Lastly, it is claimed that the amount of the damages awarded is excessive.

 The right of a water company, whether privately or publicly owned and operated, to require compliance with reasonable rules and regulations for service to customers and the payment of sums due for such service, and to provide for the discontinuance of the service for the violation thereof, has been generally recognized and may not be disputed. (*Sheward* v. *Citizens Water Co.*, 90 Cal. 635 [27 Pac. 439]; *Poole* v. *Paris Mountain Water Co.*, 81 S. C. 438 [62 S. E. 874, 128 Am. St. Rep. 923]; *Dodd* v. *City of Atlanta*, 154 Ga. 33 [113 S. E. 166, 28 A. L. R. 465], and cases cited; *Holly* v. *City of Neodesha*, 88 Kan. 102 [127 Pac. 616]; *Girard Life Ins. Co.* v. *City of Philadelphia*, 88 Pa. St. 393; 27 R. C. L., pp. 1452 et. seq.; note, 28 A. L. R., p. 472, and cases cited.) It is also a well-settled proposition that, although the consumer will not be granted relief where he has not presented a basis for a *bona fide* dispute of the amount claimed to be due (*Sloan* v. *City of Cedar Rapids*, 161 Iowa, 307 [142 N. W. 970]; *Arnold* v. *Carolina Power & Light Co.*, 168 S. C. 163 [167

S. E. 234]), nevertheless, if the facts indicate that there is ground in good faith to dispute the correctness of the amount claimed the consumer, upon tendering the rate for the current term, is entitled to have the service continued pending a settlement of the disputed overdue account. Thus in *Poole* v. *Paris Mountain Water Co., supra,* it was said: ''While a public service water company has the right to cut off a consumer's water supply for nonpayment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust, or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term.'' And this exception seems generally to have been recognized. (*Mansfield* v. *Humphreys Mfg. Co.,* 82 Ohio St. 216 [92 N. E. 233, 19 Ann. Cas. 842, 31 L. R. A. (N. S.) 301]; *Dodd* v. *City of Atlanta, supra,* and cases cited; *City of Atlanta* v. *McJenkin,* 163 Ga. 131 [135 S. E. 498]; *Wood* v. *Auburn,* 87 Me. 287 [32 Atl. 906, 29 L. R. A. 376]; *Spaulding Mfg. Co.* v. *City of Grinnell,* 155 Iowa, 500 [136 N. W. 649]; *Holly* v. *City of Neodesha, supra; Schoening* v. *Paducah Water Co.,* 230 Ky. 453 [19 S. W. (2d) 1073]; *Carter* v. *Suburban Water Co.,* 131 Md. 91 [101 Atl. 771, L. R. A. 1918A, 764]; *Birmingham Water Works Co.* v. *Bailey,* 5 Ala. App. 474 [59 So. 338]; *McEntee* v. *Kingston Water Co.,* 165 N. Y. 27 [58 N. E. 785]; 67 C. J. 1266, 1267, sec. 821; 27 R. C. L. p. 1458, and cases cited.)

What we have to determine in this case, however, is not so much the question of the plaintiff's good faith in disputing the account rendered to him—for the answer to that inquiry must be deemed to have been resolved in the plaintiff's favor by the result of the action against him in the justice's court—but whether on the facts presented the defendant shut off the water at its peril, thus rendering itself liable for any damages that might ensue. Or, we may state the question thus: Did the plaintiff do all that he was bound to do under the particular facts, so as to be entitled to recover for the damages sustained by shutting off the water supply and the consequent destruction of his garden?

██ First we may say that there is no foundation for the claim that the plaintiff should have commenced a proceeding for an injunction to restrain the threatened discontinuance of the service. The decisions herein cited in which it has been stated that an injunction is the proper remedy to restrain the shutting off of the water in the case of a just dispute, proceed upon the theory that the action at law for damages is inadequate and that the plaintiff will be entitled to the summary equitable remedy. The language of the cases, however, does not imply that the plaintiff may not resort to the theoretically less adequate remedy and recover damages if his conduct otherwise has not foreclosed his right thereto. The right to recover damages for the wrongful cutting off of the water supply has been recognized in the following cases: *Birmingham Waterworks Co.* v. *Keiley,* 2 Ala. App. 629 [56 So. 838]; *Holly* v. *City of Neodesha, supra; Birmingham Waterworks Co.* v. *Bailey, supra; Birmingham Waterworks Co.* v. *Davis,* 16 Ala. App. 333 [77 So. 927]; *Sims* v. *Alabama Water Co.,* 205 Ala. 378 [87 So. 688, 28 A. L. R. 461]; and in this state in cases which are hereinafter cited. ██ The rationale of the decided cases appears to be that the summary power of shutting off the water to coerce payment of current bills or water rent is conceded to be vested in the company furnishing such commodity so as to afford it a means of conducting its business in an orderly, efficient and economical manner, without the expense attendant upon litigating numerous small claims as to which there can be no dispute or question of their correctness; but that such right or power is not deemed to exist concurrently with the necessity to litigate a claim disputed in good faith.

██ On the other hand, it is undoubtedly a settled proposition that the plaintiff may not recover damages which have accrued by reason of his failure to do everything reasonable in his power to reduce the injuries which would otherwise ensue by a discontinuance of the service. In *Holly* v. *City of Neodesha, supra,* the dispute arose over the imposition of a $6 or $15 yearly rate for furnishing water to the plaintiff, a difference between the parties of but $9 and the question of the installation of a meter. The plaintiff sought damages of $7,490 and was awarded the sum of $4,550. The case was reversed on the holding of the court that reasonable diligence under the facts required the plaintiff to secure

water from the city at once by paying the excess claimed and thereafter suing for the overpayment, and that the plaintiff was entitled, therefore, to recover only the amount he would have been obliged to pay in securing a reconnection of the service and the amount of damages, if any, provable to the time water could again have been turned on.

The cases in this state have applied the rule drawn from 1 Sutherland on Damages, third edition, section 88, which is that the plaintiff must employ all reasonable means to render the injury as light as possible. In the case of *Mabb* v. *Stewart,* 147 Cal. 413 [81 Pac. 1073], the plaintiff recovered damages in the sum of $2,875. The judgment was reversed because the record showed that the plaintiff could have obtained sufficient water from another source for an outlay of but $30. The case of *Henrici* v. *South Feather Land etc. Co.,* 177 Cal. 442 [170 Pac. 1135], involved an excessive rate demanded by the defendant which was but a few dollars a year more than the contract rate. The plaintiff recovered a judgment of $1176. On appeal it was stated, "By paying the excessive price without conceding its correctness, he could have saved his trees, vines, and crops, and reduced his damage to a comparatively trifling sum. This it was plainly his duty to do," and the judgment was reversed. That case was followed in *Severini* v. *Sutter-Butte Canal Co.,* 59 Cal. App. 154 [210 Pac. 49], where an even greater difference existed between the excess demanded and the damages claimed. The court there stated: "When there is such inconsequential difference between the parties the law expects the one who has great interests at stake to yield in order to save excessive damages and costs," and a judgment of nonsuit was affirmed. A failure to instruct the jury in a proper case in accord with the principle stated is ground for a reversal. (*Sargent* v. *North End Water Co.,* 190 Cal. 512 [213 Pac. 33].)

However, it is also a fact that the courts of this state have refused to hold the recognized principle applicable in a case where the expense to the plaintiff in procuring performance by the defendant of its duty or fulfillment of the contract from another source, is out of proportion to the damages ensuing or is otherwise unreasonable; for in such cases the plaintiff is required to do no more than can be done at reasonable expense. Such a case is *Chambers* v. *Belmore Land etc. Co.,* 33 Cal. App. 78 [164 Pac. 404], wherein the cost of supplying head-

gates which should have been constructed by the defendant was $2,000. It was held that the rule that where the party injured could with reasonable diligence and slight expense have prevented the injury the measure of damages sustained will be limited to the reasonable cost of doing that which would have prevented the injury, did not apply to the facts there presented. A similar result was effected in the case of *Joerger* v. *Pacific Gas & Electric Co.*, 207 Cal. 8, 28 [276 Pac. 1017]. Likewise in the case of *Coulter* v. *Sausalito Bay Water Co.*, 122 Cal. App. 480, 491 [10 Pac. (2d) 780], where it was held that the application of the principle required of the plaintiff no more than slight expense in an attempt to prevent damage.

██ It may not be supposed that the plaintiff would have been considered as having made an involuntary payment had he signed the agreement demanded and paid the first of twelve instalments thereby required. The defendant itself concedes that the plaintiff could have been placed on unequal terms with it and be entitled to recover the excess had he paid the amount then claimed to be due, about $134, and secured thereby a continuance of the service. Under all of the facts presented here, however, and considering the amount of the damage which the plaintiff actually sustained, we are of the opinion that the cases cited in the next preceding paragraph control the disposition of the matter under immediate discussion, and that the plaintiff was not required to pay that comparatively substantial amount in order to prevent the destruction of a garden such as he planted on the one-fifth acre. The record does not disclose that the plaintiff could have obtained a sufficient amount of water elsewhere to irrigate his garden.

██ We are disposed to agree, however, with the defendant that the evidence does not justify the trial court's finding as to the amount of actual damage sustained by the plaintiff. The plaintiff did not seek punitive damages, and in fact the trial court expressly found that such damages were not recoverable under the facts presented. The court sustained objections to attempts of the defendant to contradict or impeach the plaintiff's testimony of the value of the floral and vegetable produce which the plaintiff would otherwise have harvested or which had been destroyed. Such evidence should have been admitted. Furthermore, the plaintiff testi-

fied that he did not sustain a total destruction of all of the vegetable and berry crops, but that he was able to harvest a portion thereof. The record indicates that it is exceedingly questionable that the plaintiff sustained damages in any such sum as that awarded him by the court from the loss of the floral, fruit and vegetable plants which he had under cultivation on one-fifth of an acre of ground. That there was gross exaggeration in the plaintiff's testimony as to the loss sustained is indicated by the fact that he testified that the cost of replacing his grass lawn, which measured 33 by 16 feet, would be $100, while the testimony of another witness was that the replacement would involve but one day's labor and sufficient seed, at a cost of but .$5. The character and amount of the produce involved, consisting of ordinary garden vegetables, berries, bulbs and plants, not being of unusual .character or extraordinary value, together with the fact that a total loss from the one-fifth acre was.not sustained, are physical facts which indicate that the amount of damages awarded was grossly excessive. We conclude, however, that a fair disposition of the appeal would be to order a reversal of the. judgment with costs to the defendant under the rule, unless the plaintiff within thirty days from the date of the decision herein file with the clerk of this court his consent to remit all damages in excess of $226.50, upon which filing the judgment to stand affirmed, and, if thus affirmed, that neither party recover costs on appeal.

It is so ordered.

On March 10, 1936, the judgment in the above-entitled case was modified by the following order:

WASTE, C. J.—The plaintiff and respondent herein having filed on March 4, 1936, his consent to remit all damages in excess of $226.50 herein, pursuant to the direction in the decision of this court filed February 24, 1936,

It is ordered that the judgment be and it is hereby modified by reducing the same to the sum of $226.50, and as thus modified, is affirmed, neither party to recover costs on appeal.

Shenk, J., Seawell, J., Thompson, J., Curtis, J., and Langdon, J., concurred.