[Civ. No. 7310.   Third Dist.   May 29, 1947.]

A. S. DUTRA, Respondent, v. M. S. CABRAL, Appellant.

Arthur C. Huston, Jr., for Appellant.

Leo C. Dunnell and Elden C. Friel for Respondent.

THOMPSON, Acting P. J.—The defendant has appealed from a judgment which was rendered against him in a suit for damages for breach of an oral lease of 40 acres of farm

land, by the terms of which the respective parties were to receive specified shares of the proceeds of crops of spinach and beans to be produced. The beans were planted on the same land after the spinach crop was removed. The defendant failed to supply a well and to pump water for necessary irrigation of the crops. The crops therefore failed.

The defendant owns 40 acres of farm land in Solano County. The complaint alleges that, on December 1, 1944, the respective parties entered into an oral lease of the property for the ensuing crop season, by the terms of which plaintiff agreed to plant, cultivate and harvest successive crops of spinach and beans, and the defendant agreed to furnish and supply a well and pump the water therefrom necessary to irrigate the crops; that the defendant failed and refused to provide the well or to pump water for irrigating the crops. There was no other adequate supply of water for irrigation and the spinach and beans which plaintiff planted and cultivated therefore failed, to plaintiff's damage in the sum of 80 per cent of the value of the crops lost. It was alleged plaintiff agreed to pay the defendant as rental for the property 20 per cent of the crops produced, and that the defendant agreed to furnish necessary water for irrigation of the crops.

The defendant answered the complaint, denying the material allegations thereof, except that he admitted the execution of the oral lease and the alleged agreed division of the crops. The defendant also filed a cross-complaint, alleging plaintiff's breach of the contract by failure to properly plant, cultivate or harvest the crops, as a result of which the crops were a total failure, to defendant's damage in the sum of $1,400. It was affirmatively alleged that the plaintiff agreed to procure and supply necessary water for irrigating the crops from adjoining property owners, but failed and neglected to do so. The plaintiff answered the cross-complaint, denying the essential affirmative allegations thereof.

The court adopted findings favorable to the plaintiffs in every essential respect. It was determined that the oral lease was executed as alleged in the complaint; that the defendant agreed thereby to provide a well and to pump water sufficient to irrigate the crops, but, upon subsequent demand, he failed and refused to do so; that it is not true that plaintiff agreed to procure water for irrigating the crops from adjoining landowners, or at all, and that it is not true that said water from adjacent landowners was available; that plaintiff entered the property pursuant to the lease and properly

planted, cultivated and cared for the spinach crop, which failed for the lack of water, with the exception of 40 crates of spinach which were harvested and sold for the sum of $50; that the reasonable value of plaintiff's share of the spinach crop which would have been produced except for the breach of contract and failure of defendant to furnish necessary water for irrigating the crop, was the sum of $1,433.20. The court further found that, after the loss of the spinach crop, the defendant renewed his promise to furnish the well and pump the water therefrom necessary to irrigate the bean crop, and in reliance thereon plaintiff properly planted, cultivated and cared for the crop, but that the defendant, upon subsequent demand, failed and refused to provide the well or supply water for irrigation purpose, which resulted in a total loss of the bean crop, to plaintiff's damage in the further sum of $1,682.40. The court further found that water for irrigating the crops from adjacent land, as alleged in the cross-complaint, was not available. The court found that all allegations of the answer and cross-complaint, inconsistent with the foregoing, are untrue. Judgment for damages for breach of contract was accordingly rendered against the defendant in the total sum of $3,115.60. From that judgment the defendant has appealed.

On appeal it is contended that neither the findings nor judgment is supported by the evidence; that the award of damages is excessive, and that plaintiff failed to exercise care to prevent loss of the crops or to minimize damages.

We are of the opinion the findings and judgment are adequately supported by the evidence.

The appellant contends that the award of damages is excessive because the evidence shows that not more than 28 acres could be irrigated from the well on the premises. The evidence indicates that the parties contemplated the raising of successive crops of spinach and beans on nearly the entire property. The leased farm consists of 40 acres of land. The plaintiff testified that he planted and cultivated 38 acres of spinach. The defendant knew that fact. He testified that plaintiff planted "the whole place . . ., except a little corner by the house." His agreement to supply water for irrigation was not limited to 28 acres or to any other specified acreage. The defendant admitted there was a well on the property, but said that it had "caved in before he got the place." When the lease was agreed upon, the plaintiff suggested that there would not be sufficient water for the spinach and bean crops,

The defendant testified that he then replied that he would clean the well; that he had talked with a well driller by the name of Percy Stohler who promised him he would fix the well for him for $300. He said he then told the plaintiff "I would fix the well." It must be inferred, in support of the findings, that the defendant agreed to repair the well and furnish all the water necessary to irrigate the crops which were planted, and that the agreed supply of water was not limited to any specified acreage.

The evidence supports an amount of damages to which plaintiff was entitled in excess of the sum for which judgment was rendered in his favor. The court found that the defendant was to furnish water sufficient to irrigate the crops, and that he was to receive, as his share of the crops, 20 per cent of the "gross receipts from said crops." The court then found that the gross market value of the spinach crop which was planted, except for defendant's failure to furnish the agreed water, was the sum of $2,054. Twenty per cent of that sum, to which the defendant was entitled to credit, is about $411. That would leave a balance of plaintiff's damages on account of loss of spinach in the sum of $1,643. But the court awarded plaintiff only the sum of $1,433.20, from which the cost of harvesting and marketing the crops should be deducted. Those figures are amply supported by the evidence. The plaintiff testified that he planted 38 acres of spinach; that with proper irrigation the farm would have produced three and a half to four tons per acre, and that its market value was $25 net per ton. The plaintiff testified that the value of $25 per ton for the spinach was exclusive of the cost of harvesting and marketing the crop. The foregoing figure, estimating the crop at the minimum figure of three and a half tons per acre, amounts to $3,325. That sum is greatly in excess of the net value of the crop, as determined by the court. The defendant profited by the court's conservative figure, and may not complain of an inadequate allowance of damages to plaintiff.

There is much argument in the briefs regarding the cost incurred by the plaintiff in planting, cultivating and caring for the crop. But that appears to be immaterial. Plaintiff's damages on account of his costs of planting and cultivating the crop were merged in his share of the market value of the crop, as we understand the agreement. In *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [90 P. 942, 12 Ann. Cas. 779, 12 L.R.A.N.S. 267], it is said on page 212: "The

true measure of damages for the total destruction of a growing or standing crop is the value of the crop in the condition it was at the time and place of destruction.''

■ The evidence also supports the finding that plaintiff sustained damages on account of the loss of the bean crop for lack of water, in the sum of $1,682.40. The court also found that the market value of the bean crop would have been $3,078, except for the lack of water. The plaintiff testified that he planted 38 acres of beans; that the land, except for the lack of water, would have produced 15 sacks per acre, and that the market value was $5.40 per sack. That would amount to exactly $3,078, as the court determined. The plaintiff's 80 per cent of that sum would amount to $2,462.40, from which the court deducted costs incurred by the plaintiff in planting and cultivating the beans. The plaintiff testified that the value of the bean crop was $3,078, and that it would cost $55 or $60 to harvest that crop. Accepting the maximum figure of $60 cost for harvesting, leaves a total value of $3,018 for the crop, from which the cost of hauling should be deducted. Plaintiff's share of that sum would amount to $2,415.40. The plaintiff was awarded damages for that crop in the sum of only $1,682.40. The evidence would have supported a judgment on that account of $2,415.40, from which the costs of hauling should be deducted. It may not be held that the award for the crop of beans is excessive, since the cost of hauling could not possibly amount to the difference between the last mentioned figure and the sum which was awarded. The total amount of damages which was awarded to plaintiff is therefore supported by the evidence.

The measure of damages for breach of contract is the amount which will compensate the aggrieved party for all detriment proximately caused thereby. (Civ. Code, § 3300.) That section provides:

''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.''

■ Ordinarily, the measure of damages for the partial or complete destruction of planted crops, as distinguished from perennial crops of grazing or pasturing land, is the local market value of the crops at the time and place of destruction, less the cost of producing and marketing the same.

(*Staub* v. *Muller,* 7 Cal.2d 221, 228 [60 P.2d 283]; *Fay* v. *Cox,* 45 Cal.App. 696, 702 [188 P. 623]; *Strecker* v. *Gaul,* 35 Cal.App. 619, 627 [170 P. 646]; *Dennis* v. *Crocker-Huffman L. & W. Co.,* 6 Cal.App. 58, 66 [91 P. 425]; 4 Sutherland on Damages, 3rd ed., 2997, § 1023; 8 Cal.Jur. 819, § 76; 25 C.J.S. 610, § 85b.) ██ When the crops are produced on stipulated shares under lease or contract, the portion only which belongs to the complaining party is to be considered in estimating the damages sustained. (*Teller* v. *Bay & River Dredging Co., supra,* at p. 213.) ██ If the crops are matured at the time of destruction and all costs of production have been paid by the aggrieved party, it is apparent that such costs should not be deducted from the market value, for, since they have been expended pursuant to contract, they represent an element of damages for which he is entitled to compensation under section 3300 of the Civil Code. It is, of course, true that when the crops have been completely destroyed, and the producer thereof is saved the cost of harvesting and hauling them to market, such last mentioned costs should be deducted from the market value.

In a suit for the destruction of planted crops, the evidence which is necessary to prove the loss sustained thereby depends on the state of maturity of the crops at the time of the destruction, and various other circumstances. ██ Evidence of the average yield per acre of similar crops on land of the same character in the immediate vicinity is competent. (*Fay* v. *Cox, supra;* 25 C.J.S. 611, § 85b.) In the Fay case a crop of barley was destroyed by fire. A judgment for damages was rendered in favor of the plaintiff. On appeal, the court quoted with approval from *Lester* v. *Highland Boy Gold Mining Co.,* 27 Utah 470 [76 P. 341, 101 Am.St.Rep. 988, 1 Ann.Cas. 761], regarding the character of evidence which is competent to prove the value of the crops destroyed, as follows:

" 'In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury or destruction, the expense of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity, or within a reasonable

time after the injury or destruction of the crops. . . . The true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction.' ''

Regarding the proof of the value of unmatured planted crops which have been destroyed, it is said in 25 Corpus Juris Secundum, at page 611:

''. . . It is obvious that the true value of a growing and unmatured crop must be arrived at from a consideration of numerous facts, among which are the kind of crops which the land will ordinarily yield, the probable yield under proper cultivation, the average yield per acre of similar land in the neighborhood cultivated in the same way, the stage of advancement at which the crop was when injured or destroyed, the expenses which would have been incurred after the injury in fitting the crop for market and transporting it to market, the market value of the crop, the market value of the probable crop without the injury at the time of maturity, and circumstances bearing on the probability of maturing the crop in the absence of the injury.''

The evidence in the present case substantially conforms to the foregoing rules for ascertaining the values of the crops of spinach and beans destroyed. The plaintiff planted, cultivated, harvested and marketed the same kinds of crops in that same year on similar soil of another farm in that immediate vicinity, and testified to all the essential facts necessary to support the damages awarded by the court. ██ It is true that the court deducted from the ascertained market value of the crops the value of the labor performed and the money expended by plaintiff in planting and cultivating the crops, and awarded him damages in a sum much less than he was entitled to as full compensation under the evidence. But that is immaterial. The plaintiff did not appeal from that judgment, and the defendant may not complain of a method of computation which was favorable to him. The damages which were awarded are not excessive.

Finally the appellant contends that plaintiff may not recover damages in this case because he failed to exercise reasonable care to save the crops from destruction by purchasing water for irrigation purposes from the adjoining premises. ██ The burden was on the defendant to show facts in mitigation of the damages sustained. (25 C.J.S. 643, § 96.) He failed to do so. The court adopted a finding in that regard as follows:

". . . There was not at any time available any other sufficient supply of water to irrigate more than a small portion of said lands and then only at a large expense to plaintiff; that it is not true that plaintiff could have obtained water from adjacent land owners at slight expense, sufficient to irrigate said lands."

The foregoing finding is adequately supported by the evidence. ▊ It is true that it is the duty of an aggrieved party to exercise reasonable care to minimize anticipated damages growing out of the breach of a contract. But, ordinarily, it is not the duty of a party to a contract to assume the burden which the adverse wrongdoer has violated, nor to incur relatively large expenses on that account. (*Schultz* v. *Town of Lakepart,* 5 Cal.2d 377, 384 [54 P.2d 1110]; 8 Cal. Jur. 782, § 43.) ▊ Where the cost of procuring water from a source other than that which is contemplated by the contract is relatively large as compared with the damages sustained, the California cases have held that the failure to thus minimize damages will not warrant the reversal of a judgment in favor of the aggrieved party. In the Schultz case, *supra,* after reviewing several similar cases, the Supreme Court said, at page 384:

"However, it is also a fact that the courts of this state have refused to hold to the recognized principle applicable in a case where the expense to the plaintiff in procuring performance by the defendant of its duty or fulfillment of the contract from another source, is out of proportion to the damages ensuing or is otherwise unreasonable; for in such cases the plaintiff is required to do no more than can be done at reasonable expense."

We think the foregoing principle is applicable to the facts of this case. The defendant failed to prove that water was available from the neighbor's property or that the cost thereof, if available, would not be proportionately large as compared with the damages sustained by the loss of crops. The plaintiff relied on the defendant to repair his well and supply the necessary water to irrigate the crops. The crops were partially matured before plaintiff had reason to anticipate a breach of that covenant on the part of the defendant. If any substantial quantity of water could have been procured from another source, it is apparent that it would have required considerable time, and labor and expense to have secured it. It would have required the purchase of the water

and the laying of pipes or the digging of ditches from the adjoining property over and upon defendant's land. In support of the findings in that regard, we think the outlay of costs, time and labor would be too unreasonable to warrant this court in holding that the judgment should be reversed on the doctrine of failure to minimize damages under such circumstances.

The judgment is affirmed.

Schottky, J. pro tem., and Peek, J., concurred.