[Civ. No. 8667.   Third Dist.   Oct. 17, 1955.]

FRED G. QUESTO et al., Appellants, v. MIGUEL J. DORADO, Respondent.

William Wear Clark for Appellants.

Mazzera, Snyder & DeMartini for Respondent.

PEEK, J.—By their complaint plaintiffs sought to recover from defendant the rent due under the terms of a lease between the parties. Defendant's cross-complaint alleged plaintiffs' breach of the contract by failing to make available to defendant water for the irrigation of a tomato crop as provided in said lease. The trial court determined that from the damages suffered by defendant there should be deducted the rent found to be due and owing to plaintiffs leaving a net amount in favor of defendant in the sum of $5,025, and judgment was entered accordingly. Plaintiffs' motion for a new trial was denied and this appeal followed. It is plaintiffs' contention on appeal that the court erred in excluding certain testimony and that certain findings are inconsistent, insufficient and not supported by the evidence.

The record shows that the Plain View Irrigation District was formed to utilize water from the Mendota Canal, if and when the same was available. Included within the district was certain land leased by plaintiffs, who in turn had subleased the same to defendant. The land was bounded on the south by Schulte Road. An irrigation ditch extended from the main canal north to the southwest corner of the property, thence along Schulte Road to a siphon which passed under the road to the property.

Although water was to be made available for irrigation by plaintiffs to defendant beginning March 15, 1952, and water was not available until May 3, 1952, defendant's claim for damage is not predicated upon this delay in the supplying of water, but rather upon plaintiffs' failure to supply any water between July 7 and July 24.

Plaintiffs' first contention relates to this claim of defendant. It is their contention that the court erred in striking certain testimony of plaintiff Questo concerning two conversations with defendant during July. Their argument is that in the statements attributed to defendant he admitted the good condition and progress of his crop during the month of July and at a time when he alleged no water was available, and his statements therefore were admissible under section 1870, subdivisions 2 and 3, of the Code of Civil Procedure.

We find no error in either ruling by the court. The testimony in each instance related to a conversation among the defendant, his son and the plaintiff Questo. Plaintiff's testimony was indefinite, and since no direct statement was shown to have been made by defendant, the testimony in question did not come within the provisions of said section of the Code of Civil Procedure or any exception thereto. (See *Adkins* v. *Brett,* 184 Cal. 252, 255 [193 P. 251].) Furthermore, while plaintiff states that such conversations took place between July 15 and the first of the following month, there was testimony that they occurred prior to the damage defendant alleged he had suffered.

Plaintiffs' next contention, that the court erred in excluding evidence relative to irrigation practices and the crops grown on adjacent land, is likewise without merit. They argue that such evidence was especially important since this was the first time that this particular land had been farmed and therefore there was no past history as to its productivity. To supply additional facts and to offset defendant's objection, plaintiffs sought to introduce into evidence the irrigation record of an adjacent farm, and the offer was refused. We find no error in the refusal of the court to hear the excluded testimony or to admit the irrigation record in evidence. Both the hypothetical question and the proffered record were clearly defective. Both lacked proper foundation and neither was based upon facts in evidence. (*McCullough* v. *Langer,* 23 Cal.App.2d 510, 519, 521 [73 P.2d 649].)

Plaintiffs' next contention is that the finding (number 8) by the court that defendant suffered a loss of 7 tons per acre, could be consistent with and find support in the evidence only if it could be said that the land produced no tomatoes. The argument in support of this contention appears to be that the court's finding is predicated upon testimony of one witness who stated that 7 tons would be a normal crop for this area. This argument completely ignores the estimates

given by other witnesses of from 4 to 22 tons per acre and the unquestioned fact that defendant marketed an average of 8 tons per acre. It is therefore quite obvious that any figure found by the trial court within the range of the estimates given would find complete support in the evidence.

It is the well-established rule that, "Findings of a court are to receive such a construction as will uphold, rather than defeat its judgment thereon, and are to be read and construed together and liberally construed in support of the judgment." (*Metcalf* v. *Hecker*, 127 Cal.App.2d 634, 638 [274 P.2d 188].)

Plaintiffs' final contention is that the evidence shows that respondent failed to mitigate damages and hence the court's finding number 7, that respondent was under no duty to so do and that he was justified in such inaction by reason of appellants' representation is a mere conclusion of law and is not supported by the evidence. The court found that the damage to the tomato crop was caused solely by the plaintiffs' failure to furnish water in accordance with their agreement and that no part of the damage was caused by the defendant and concluded as follows: ". . . that it is true that under the evidence in this case, ordinary care and prudence did not require the defendant and cross-complainant to assume the burden of the obligation of the plaintiffs and cross-defendants to supply water; that it is true that defendant and cross-complainant had a right to rely upon the continuing representations of the plaintiffs and cross-defendants that they would furnish water in accordance with their agreement."

The evidence in this regard shows that difficulty had developed, in that sediment clogged up the irrigation ditch, thereby making it impossible for the water to go through the siphon to defendant's property. According to defendant the most serious of these interruptions in the availability of water occurred from July 7 to July 24. This was not merely a case of sand clogging the siphon. The solid materials carried down the canal completely clogged the irrigation ditch. On each previous occasion when the ditch had been filled with this detritus it was necessary to have an excavator with a dragline remove the sediment. In other words, it was not a simple clearing of the siphon but a relatively expensive job necessitating the use of heavy equipment. Illustrative of this fact is defendant's exhibit "J" which shows that the spoil bank formed by removal of detritus from the irrigation ditch was over 6 feet high. Additionally the record discloses

no testimony as to the cost of the work, nor is there any testimony as to the availability of a dragline operator other than the fact that one who formerly was employed by plaintiffs when the ditch was clogged previously was busy on a job, and Questo's further testimony that it probably would be better if they waited a few more days until he was available. As noted in *Gilmore* v. *Hoffman*, 123 Cal.App.2d 313 [266 P.2d 833], under such circumstances the trial court was presented with a factual question for its determination, and "Its finding on this question, under the evidence, cannot be disturbed on appeal." (P. 320.)

While it was the duty of defendant "to exercise reasonable care to minimize anticipated damages growing out of the breach of a contract" (*Dutra* v. *Cabral*, 80 Cal.App.2d 114, 122 [181 P.2d 26]), it was not for him to assume the burden of the wrongdoer nor to incur relatively large expenses on that account. (5 Cal.2d 377 [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168].) Here the evidence amply supports the findings of the trial court that the damage was caused solely by plaintiffs' failure to furnish water in accordance with the terms of the agreement; that no damage was caused by defendant, and that ". . . under the evidence in this case, ordinary care and prudence did not require the defendant and cross-complainant to assume the burden of the obligation of the plaintiffs and cross-defendants to supply water"; and "defendant and cross-complainant had a right to rely upon the continuing representations of the plaintiffs and cross-defendants that they would furnish water in accordance with their agreement."

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.